## 425.  JOHNSON *v.* THE STATE.

1. Where the defendant in a criminal case has employed counsel of his own choice to represent him, and upon the call of the case such counsel is not present, but the defendant notifies the court that he is en route and will arrive upon the first train, such counsel being absent by reason of an unintentional misstatement by the solicitor-general, and the court overrules a motion to postpone until counsel can arrive, and forces the defendant to trial with the advice only of an attorney then and there appointed by the court, a new trial will be ordered. *Delk* v. *State*, 100 *Ga.* 61; *McArver* v. *State*, 114 *Ga.* 514.

2. Under the evidence in this case, the defendant was not guilty of the crime of robbery.

Indictment for robbery, from Bartow superior court—Judge Fite. March 5, 1907.

Argued April 22,—Decided May 3, 1907.

*G. A. Coffee, G. H. Aubrey,* for plaintiff in error.

*Sam. P. Maddox, solicitor-general,* contra.

POWELL, J. We will discuss only the proposition announced in the second headnote. The prosecutor, a white man 27 years old, suffering from no physical infirmity, hired a horse and buggy, with the view of being carried from Adairsville to the home of a Mr. Hall, some seven miles away in the country. The defendant, a negro boy, was sent along as driver. As they were leaving the town the defendant asked that another negro boy, Jim Gardner, who appeared by the roadside, might be allowed to go along in order to be company for the defendant on his return trip that night. The defendant sat in Gardner's lap. The prosecutor was drinking and had some packages of liquor in the buggy. As they went along, all three of them drank of the liquor. After dark, and before they arrived at Hall's place, the prosecutor, so he testified, felt Gardner reach in his (the prosecutor's) side pocket and remove his pocket-book and money. He made no resistance, said nothing; but when they arrived at their destination he called Hall out to the buggy and asked him to search the boys, stating that they had robbed him. The defendant was first searched and then Gardner. The purse and money were found on the seat under Gardner's person. In explaining why he made no resistance, the prosecutor said: "I didn't know whether they had any guns, or what they had in their pockets; I was afraid of them." As a matter of fact, the search disclosed that the boys were entirely unarmed. The indictment charged robbery by force and intimidation.

It seems absurd to call this robbery in light of the elements necessary to constitute this offense at common law and under our decisions; for our Penal Code definition is merely declaratory of the common law. The "force," in our definition, is the same as the "violence" of the common-law definition; and the "intimidation" in ours is synonymous with the "putting in fear" in the common law. "The rule is this: if the fact be attended with such circumstances of terror—such threatening by word or gesture, as in common experience are likely to create an apprehension of danger, and induce a man to part with his property for the safety of his person, it is a case of robbery. Fost. 128; 4 Black. Com. 243; 1 Hawk. P. C. 96; 1 Leach, 280; 3 Chitty's C. L. 803; 1 Russell on Crimes, 879." *Long* v. *State,* 12 *Ga.* 321. To quote the same decision further (p. 322): "The rule laid down gives the safest

criterion for their ascertainment, that is, the circumstances of terror are such as in common experience are likely to create apprehension of danger. If, according to common experience, the apprehension of danger, growing out of the circumstances, is so great as to constrain a man to part with his property for the safety of his person, then they are sufficient to make the taking violent, and a robbery. The place, the time, and the number of the assailants are to be considered—as a retired place, at night, and a number so great as to make the idea of resistance impracticable. To these may be added uproar, and shouts, and disguise, and the presence of offensive weapons. See the case of robbery on Gadshill. 3 Shakespeare, 462 to 465. Threats by word or gestures are of themselves sufficient to imply violence, and are the most usual means of intimidation." See also *Burke* v. *State,* 74 *Ga.* 372, and *Spencer* v. *State,* 106 *Ga.* 692, and cit. It is to be remembered that since the decision in the *Spencer* case, the legislature has made the sudden snatching of property robbery; but this case is not within that statute. In the case at bar no personal violence is shown, nor any resistance, nor a struggle. As to intimidation, it is preposterous to entertain for a moment the idea that the taking of the purse and money were attended with circumstances of terror. If this full-grown white man, just at the age of manhood's prime vigor, was terrorized by the mere presence of two negro boys, who had made no threats, who offered no violence, who displayed no weapons, who had no weapons, his terror was contrary to common experience; and that kind of terror is not of the character contemplated by law. *Judgment reversed.*