### JORDAN *v.* THE STATE.

LUMPKIN, J. 1. On a trial for murder, the evidence authorized the jury to find that three men were stealing watermelons from a patch at night, and that one of them was shot by a person who was left by the owner to guard the property. The defendant's statement as to the actual occurrence was in substance as follows: He received information that some men were hanging around the patch, with the apparent intent to steal melons. When he reached the patch, the men were in it. He asked what they were doing there, and they replied by asking him what was that to him. He said he had a great deal to do with it, and if they did not get out of there he would make them do so. They said that if he did not get out from there they would make him do so. He said: "You will have to; I am here on business." At that time they started toward him, and one of them picked up a watermelon; and as he stopped, the accused shot him. *Held,* that the statement, in connection with the evidence, was sufficient to require the court to instruct the jury, upon request, on the subject of the right of one lawfully in charge of property to protect it against robbery by intimidation, and the doctrine of reasonable fears in connection therewith; and a refusal to charge on that subject, on request, and charging in effect so as to exclude such theory from the jury, was erroneous. Penal Code, §§ 151, 153, 170; 2 Bish. Cr. L. §§ 1177, 1178; *Clements* v. *State,* 84 *Ga.* 660 (11 S. E. 505, 20 Am. St. R. 385); *Long* v. *State,* 12 *Ga.* 293, 320.

2. While the statement of the accused, in connection with the evidence, would authorize a charge on the subject of voluntary manslaughter, there was no request to charge on that subject.

*Judgment reversed. All the Justices concur, except Fish, C. J., dissenting.*

NOVEMBER 23, 1910.

Indictment for murder. Before Judge Charlton. Chatham superior court. May 6, 1910.

*George W. Owens* and *D. S. Atkinson,* for plaintiff in error.

*John C. Hart, attorney-general,* and *Walter C. Hartridge, solicitor-general,* contra.

FISH, C. J., dissenting. I am constrained to dissent from the views of the majority of the court. The evidence was, in effect, as follows: One Perry, in leaving home, instructed Jordan, who was in his employ, to guard Perry's melon-patch and to shoot any one who might attempt to steal the melons. The accused agreed to do this. He went to the melon-patch at night, armed with a

double-barreled shotgun loaded with buckshot, and sat down to watch for thieves. Two men, and a boy about seventeen years old, came into the patch after he got there. As the boy, who was about thirty feet away from the accused, picked up a melon worth about ten cents, the accused, without hailing, warning, or saying a word to the parties in the patch, shot the boy, who, a short time thereafter, died from the wounds so inflicted. The material part of the statement made by the accused to the jury was as follows: "Mr. Perry put me on the place and told me to look after it; he said, when he was leaving Monday morning,. . . 'I want you to . . protect what I have on the place.' I said, 'All right.' He told me to watch particularly his watermelon-patch—that they were stealing his watermelons; and that if any one came and stole his watermelons, to shoot them. I said, 'All right.' That night, between eight and nine, Mr. Clifton came there, and he said, 'Old man Jordan.' I said, 'Yes, sir.' He said, 'There are some fellows hanging around Mr. Perry's watermelon-patch; they are going to steal his watermelons.' I said, 'I will go down there this night to see what they are doing.' When I got down there they were in the patch. I said, 'What are you doing in here?' They said, 'What is that to you?' I said, 'I have a great deal to do with it; if you don't get out from here, I will make you.' They said, 'If you don't get out from here, we will make you.' I said, 'You will have to; I am here on business.' At that time they started towards me, and this man picked up a watermelon, and when he stopped I shot." There was nothing in the evidence or the statement of the accused tending to show that any of the parties in the patch except the accused had a weapon of any character. One of the assignments of error in the motion made by the accused for a new trial was upon the refusal of a written request to give in charge the following: "If you find that defendant . . was protecting property belonging to . . some one for whom he was acting as agent in guarding the property, and that this property was in the immediate presence of defendant, or so near at hand as to be under his immediate attention [protection?], and that deceased and those acting with him attempted to [by?] force or intimidation to wrongfully, fraudulently, and violently take this property, or any of it, from the presence of defendant with intent to steal the same, or that defendant had cause to believe

they intended to do this, then I charge you that defendant would have been justified in protecting the property thus under his control, to the extent of killing the deceased." The majority of the court are of the opinion that the refusal to so instruct the jury was error, requiring the grant of a new trial. With the highest respect for the views of my brethren, I am decidedly of a contrary opinion. The statement of the accused was not sufficient to authorize an instruction to the jury on the hypothesis that he shot the deceased to prevent him and those acting with him from committing robbery by intimidating the accused. "Robbery is the wrongful, fraudulent, and violent taking of money, goods, or chattels from the person of another by force or intimidation, without the consent of the owner." Penal Code, § 151. Or, as sometimes defined, it is the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear. 2 Clark & Marshall on Crimes, § 370, and cases cited.

My opinion is that the statement of the accused, when considered in connection with the undisputed evidence, was not sufficient to authorize a finding that he was intimidated. Neither his statement nor the evidence shows, as above stated, that the deceased or either of his companions was armed with any kind of a weapon, and the uncontradicted evidence is that the accused was armed with a double-barreled shotgun loaded with buckshot, and that he shot the deceased when he was about thirty feet away from him, at which time, according to the prisoner's own statement, the deceased, who had started toward him, had stopped and picked up a melon. It does not appear that either of the men who were with the deceased in the patch had approached any nearer to the accused than he did, the statement of the accused merely indicating that they had started toward him. Besides, the evidence, as well as the statement of the accused, showed that he had agreed to obey the instructions of the owner of the melons to shoot any one who came to steal them, and it would seem he had evidently gone to the melon-patch for that purpose.

In *Long* v. *State,* 12 *Ga.* 293, 321 (12), in defining robbery by intimidation, it was said: "The rule is this: if the fact be attended with such circumstances of terror—such threatening, by word or gesture, as in common experience are likely to create an

apprehension of danger, and induce a man to part with his property for the safety of his person, it is a case of robbery." Citing: Fost. 128; 4 Bl. Com. 243; 1 Hawk. P. C. 96; 1 Leach, 280; 3 Chitty's C. L. 803; 1 Russell on Crimes, 879. See also *Johnson* v. *State,* 1 *Ga. App.* 729 (57 S. E. 1056). Surely there were no such circumstances of terror, under the rule just above quoted, as in common experience were likely to create an apprehension of danger in the mind of the accused, so as to induce him to part with the melon for the safety of his person. For these reasons, I am, as already stated, of the opinion that the request to charge, based upon the theory of an attempted robbery, was properly refused. I may say here that even where a serious injury is intended or might accrue to one's property by a forcible attack and invasion made thereon by another, before the owner will be justifiable in killing the person so forcibly attacking and invading his property, in order to prevent the same, he must use persuasion, remonstrance, and other gentle measures, and it must appear that the killing is absolutely necessary to prevent such attack and invasion. It is manifest to my mind that the accused was not justifiable in taking the life of the deceased, where it appears that the property involved was so inconsiderable as to value—several melons of the value of ten cents each—that the injury threatened was not serious, but slight, and where no persuasion, remonstrance, or other gentle measures were used by the accused, and where it does not appear that the killing was absolutely necessary to prevent serious injury to the property. "A killing to prevent a taking of slight moment or importance can not be justified, though it technically amount to a robbery." Wharton on Homicide (3d ed.); 781, citing Bowman *v.* State (Tex. Crim. App.), 21 S. W. 48, where it was held that the fact that one took from another a nickel by violence, with intent to appropriate it, did not justify the owner in killing him while retreating with the money.

Furthermore, I do not think that there was anything in the evidence or the statement of the accused, or both, considered together, that would have authorized a charge upon voluntary manslaughter, had a proper written request been made for the court to instruct the jury on that subject. In *Hayes* v. *State,* 58 *Ga.* 35, 46 (7), it was said: "To intentionally kill, with a deadly weapon, one who is committing a trespass upon property, is generally mur-

der, and not manslaughter. Wharton on Homicide, § 414. No exception to this general rule is involved in the present case, the trespass, if any, being the appropriation and removal of a small piece of timber of trifling value." Penal Code, § 65, expressly declares that "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder," and that to reduce the homicide to voluntary manslaughter "the killing must be the result of that sudden, violent impulse of passion supposed to be irresistible," and that "there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied." I do not, of course, contend that the homicide may not be graded as voluntary manslaughter, when the killing was done, not for the purpose of resenting the provocation given, but because of threats, accompanied by menaces, which, under the circumstances of the particular case, may, in the opinion of the jury, have been sufficient to arouse the fears of a reasonable man that his life was in danger, or that a felony was about to be perpetrated upon him. Nor do I contend that a trespass upon property in the immediate presence of the owner, accompanied with hostile demonstrations against his person, may not, in the absence of deliberation or premeditation indicating legal malice, amount to the "equivalent circumstances" referred to in Penal Code, § 65, as sufficient to justify the character of passion that may make the homicide voluntary manslaughter. I am firmly convinced, however, that in the present case there is nothing in either the evidence or the statement of the accused that would have authorized the jury to find that there were any such threats, accompanied by menaces, as were sufficient, under the circumstances of the shooting, to arouse the fears of a reasonable man that the life of the accused was in danger, or that a felony was about to be committed upon him; and it is clear to my mind that the deliberation, premeditation, and preparation on the part of the accused to shoot the deceased or any one else who might attempt to steal the melons leave no place for the theory that the accused shot the deceased under "that sudden, violent impulse of passion supposed to be irresistible."

The facts of the present case materially differentiate it from *Crawford's* case, 90 *Ga.* 701 (17 S. E. 628, 35 Am. St. R. 242). There the deceased stopped the wagon of Crawford, which he was driving along the highway, and took therefrom certain meat belonging to Crawford, for the declared purpose of settling a debt which he claimed was due him by Crawford; and while proceeding to cut off with his pocket-knife enough of the meat to pay the debt, Crawford sought to prevent him, and the deceased cut at him with his knife to prevent interference; whereupon Crawford seized a fence-rail (a deadly weapon), and without necessity struck the deceased on the head, thereby causing his death. It was held that the homicide was not justifiable, if the claim of debt was made in good faith and there was no attempt to steal, but was voluntary manslaughter; but if the blow, however, was to prevent robbery and was necessary for that purpose, the homicide was justifiable. In the present case, though the boy whom the accused killed evidently intended to steal the melons, there was nothing to show that the accused was intimidated so as to make the boy's offense robbery; nor was there anything tending to show that the killing was necessary to prevent the larceny of the melons, which were of insignificant value.

To my mind there was no merit in any of the assignments of error, and the court did not err in refusing to grant a new trial.