## WALKER *v*. THE STATE.

No. 14287. OCTOBER, 14, 1942.

*Thomas A. Jacobs Jr.,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, Charles H. Garrett, solicitor-general,* and *Emil J. Clower, assistant attorney-general,* contra.

REID, Chief Justice. The State charged that the offense of rape was committed on the person of Miss Maud Hudson, a white woman, in Jones County, on December 21, 1941, by Robert Walker. The record shows that on that date in the afternoon Miss Hudson, who was a cripple fifty-four years of age, was alone at the home of her sister, where she lived, when a negro, later identified by her as the defendant Walker, came to the house, overpowered her, and committed this offense. She fell into a state of unconsciousness. Some time later her relatives returned to the house and reported

the occurrence to the sheriff, who with his son went in search of the negro then unknown but described by her. They soon met two negroes in the road, one of them being Walker. Walker had a pistol in his pocket, and upon his alleged refusal to surrender it the sheriff shot him in the arm and placed him under arrest. The pistol was identified as recently stolen from the home occupied by Miss Hudson. Walker was immediately taken to Macon, and there confined in the jail of Bibb County. Three or four days after the alleged crime the judge of the superior court of Jones County, without Walker's knowledge and without communicating with him, appointed three members of the bar of that county to represent him. On January 5, 1942, the grand jury of. Jones, County indicted Walker for the offense. On the same day, while he was detained in Bibb County, and without his knowledge, on the petition of appointed counsel, assented to by the solicitor-general, the judge of the superior court of Jones County entered an order changing the venue of the case, and ordering it transferred to Bibb County (in another circuit) for trial. This was done upon representation in the petition, evidence of which was given by the sheriff, that there was danger of mob violence if the trial should be held in Jones County, and that an impartial jury could not be secured in the county.

The record is not exactly clear just when, but some time afterward two of the three lawyers appointed as his counsel went to Macon and conferred briefly with Walker, telling him they had been appointed by the court to represent him. Very little appears in the record as to what occurred or was discussed in this conference, except that they discussed who might be used as witnesses. The lawyers did not see him again until the day before his trial, which occurred on January 15, 1942, nor had they seen any of his people. During his confinement the jailor was under instructions to allow no one from the outside to see him except upon order of the sheriff of Jones County or of the judge of the superior court of that county. The defendant was told of these instructions and was advised that except upon these conditions he would not be allowed to see any one. Some negroes, not definitely identified but apparently his relatives, applied at the jail to see him, and were denied this permission. Certain relatives (it is not clear whether they were the ones who went to the jail) applied to the sheriff of Jones

County for permission to see him, and according to his affidavit "Deponent denied the request, and stated to the relatives of Robert Walker that they would not be allowed to see him." They did not specify what they wanted to see him about, nor had he before the day his case was called actually requested any one to communicate with any lawyer. Walker stated that he first gained knowledge of when and where he was to be tried from another prisoner, who had seen notice of it in a newspaper. Counsel who had been appointed conferred again with him on the day before his trial. The nature of this conference is not clearly shown, nor is it clear just when he first advised these lawyers of his wish to employ other counsel. On the morning his case was called, the following discussion occurred: "The Court: Well, what say you, are you ready or not ready? Mr. Anderson (of counsel for defendant): We are ready. The defendant says he is not ready, as he has not had time to procure counsel. The Court: Are you ready or not ready, Walker? The defendant, Robert Walker: I am not ready. He has not given me a chance to get a lawyer since I have been in jail since before Christmas. The Court: Have you asked anybody to get you a lawyer? Defendant: I have not seen anybody. He has not let anybody come up there. Mr. Guy Anderson (of counsel for defendant): I am the lawyer that went to see him. I talked to him about the case, and told him what I was there for. The Court: About being appointed, and he made no objections at the time? Mr. Anderson: No, sir. The Court: Did he ask you to get other counsel? Mr. Anderson: No, sir. Mr. Jackson (of counsel for defendant): Ask him if any official asked him if he had sufficient funds to employ counsel, and whether or not I asked him. The Court (to defendant): Have you got any money to employ counsel with? Defendant: No, sir, they have not asked me anything. The Court: Did anybody ask you that? Defendant: No, sir. The Court: Did you request the court to appoint you counsel? Defendant: No, sir. The Court: How long have you been in jail? Defendant: Going on four weeks. The Court: Did you know the charge against you? The defendant: Yes, sir, he told me. The Court: Did the jailor tell you that? Defendant: Yes, sir. The Court: Did the jailor, did you tell the jailor you wanted to get a lawyer? The defendant: No, sir. The Court: Do you have any objection to your lawyers? Defendant: No,

sir, but I wanted my people to get me a lawyer." (He later stated that he wanted his people to get him a lawyer in Bibb County, the appointed counsel being from Jones County.) Mr. Anderson, of counsel for the defendant: "About ten days ago we came to see him, and told him the judge had appointed us to defend him, and we said, 'Is that all right with you?' and he said yes, and I proceeded to talk to him about his case. All three of us were with him, and conferred with him about the trial. . . The Court: I will overrule the motion for continuance. I think the stenographer should add that counsel appointed has a good reputation, and are good lawyers."

The trial proceeded, and a verdict of guilty was returned the same day. Counsel who had been appointed and who represented him in the trial filed a motion for new trial, and were intending to file an amendment to the motion, when relatives of the defendant employed present counsel, who has continued to act.

The motion for new trial, among other grounds, assigns error on the refusal of the judge to postpone the trial until the defendant could communicate with his family in an effort to procure counsel of his own choice. After reciting substantially what has been set out above, it is stated in this ground: "Movant alleges that while he was not held strictly incommunicado, that his people were denied the right to see him before his trial, and orders were issued that no one be allowed to see movant, except by permission of the sheriff of Jones County, which county was the venue of the alleged offense. Movant therefore had no opportunity to discuss with his people the employment of chosen counsel, or to arrange for compensation for such counsel so selected. Movant avers the refusal of the court to allow time for movant to obtain counsel of his choice denied him the privilege and benefit of counsel, and violated the provision of the constitution of the United States and of the State of Georgia, and denied movant the equal protection of the law, and deprived movant of life, liberty, and property, without due process of law; and the effective assistance of counsel guaranteed by the sixth amendment of the constitution of the United States was denied him."

There is no challenge as to the fidelity, skill, or competency of counsel who did represent the defendant, although it is contended they failed to make certain points and failed to object to the ad-

mission of certain testimony. The contention is that he was deprived of opportunity to employ counsel of his own choice. In a counter-showing it is contended by the State that if he, while in jail, had asked the sheriff or jailor to communicate with a lawyer they would readily have done so. There is much detailed recital in the record as to what occurred; but on the main question to be considered the foregoing is a fair statement of the record, together with some references to be made in the opinion.

■ Grounds one and two of the amendment to the motion for new trial, the one based on the refusal of the judge to postpone the trial at the request of the defendant in order to permit him to see his people with a view to employing counsel of his own choice, and the other raising somewhat more technically the question whether in the circumstances the defendant was deprived of the privilege and benefit of counsel as guaranteed by the constitution, and in violation of the due-process clauses of the constitution of this State and of the United States, are so interrelated that a conclusion in one will follow from the other; and accordingly they will be treated together.

So far as here pertinent, our State constitution (art. 1, sec. 1, par. 5) provides: "Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel; shall be furnished, on demand, with a copy of the accusation, and a list of witnesses on whose testimony the charge against him is founded; shall have compulsory process to obtain testimony of his own witnesses; shall be confronted with the witness testifying against him; and shall have a public and speedy trial by an impartial jury." Code, § 2-105. The constitution of the United States, art. 6, provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." Code, § 1-806. This sixth amendment of the United States constitution has been held to apply only to one charged with crime in the Federal courts. Gaines v. Washington, 277 U. S. 81 (2) (48 Sup. Ct. 468, 72 L. ed. 793);

Eilenbecker *v*. Plymouth County, 134 U. S. 31, 34 (10 Sup. Ct. 424, 33 L. ed. 801) ; *Coleman* v. *State,* 141 *Ga.* 731 (82 S. E. 228) ; *Lewis* v. *State Board of Medical Examiners,* 162 *Ga.* 263, 266 (133 S. E. 469) ; *McIntyre* v. *State,* 190 *Ga.* 872, 873 (2) (11 S. E. 2d, 5).

These are aside from the familiar provisions of both constitutions as to due process. The denial of counsel has been held to violate the fourteenth amendment to the Federal constitution. Powell *v*. Ala., 287 U. S. 45 (53 Sup. Ct. 55, 77 L. ed. 158, 84 A. L. R. 527). Since 1863 (§ 4613) our Code has contained the provision, now part of § 27-403, as follows : "A reasonable time shall be given to the defendant or prosecutor for the preparation of his case ; and in no event shall the defendant be forced to trial without the aid of counsel, if there be a reasonable probability of his securing counsel without too great delay." In *Harris* v. *Norris,* 188 *Ga.* 610, 615 (4 S. E. 2d, 840), we said of this section : "The two requirements of this section are (1) that defendant must be given a reasonable time to prepare his case, and (2) that he is not to be *forced* to trial without counsel, if he is able to procure one within a reasonable time." Of this constitutional right to the benefit of counsel as guaranteed in our State it has been said : "The constitutional guaranty that 'every person charged with an offense against the law shall have the privilege and benefit of counsel' should be strictly guarded and preserved. So deeply grafted in our practice has this great right become that none are so low or so poor but that they may rely upon it. If it be so that they are unable to retain counsel, the courts will appoint counsel for them, without charge to the defendant." *Martin* v. *State,* 51 *Ga.* 567. "No person meeting these requirements should be deprived of his right to be represented by counsel *chosen by himself,* or forced to trial with the assistance only of counsel appointed for him by the court." (Italics supplied.) *Delk* v. *State,* 100 *Ga.* 61 (27 S. E. 152). In *Chivers* v. *State,* 5 *Ga. App.* 654, 657 (63 S. E. 703), the Court of Appeals was dealing with a case where the accused had more than one lawyer, all of his own choice ; but his leading counsel was justifiably absent, and the court ordered him to trial with those of his counsel present, overruling his motion to continue. The Court of Appeals reversed that judgment, and by Hill, C. J., said : "The right to be represented by counsel is one of the most

valuable rights accorded to a man, when indicted for a crime. In this State it is a constitutional right, the bill of rights declaring that 'every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel.' Civil Code, § 5702. The spirit of this constitutional provision entitles a man charged with crime to the privilege and benefit of counsel of his own selection; and this right of selection must also extend to the right to select the counsel who shall lead in the conduct of his case." In *Johnson* v. *State,* 1 *Ga. App.* 729 (57 S. E. 1056), it was held: "Where the defendant in a criminal case has employed counsel of his own choice to represent him, and upon the call of the case such counsel is not present, but the defendant notifies the court that he is en route and will arrive upon the first train, such counsel being absent by reason of an unintentional misstatement by the solicitor-general, and the court overrules a motion to postpone until counsel can arrive, and forces the defendant to trial with the advice only of an attorney then and there appointed by the court, a new trial will be ordered. *Delk* v. *State,* 100 *Ga.* 61 [supra]; *McArver* v. *State,* 114 *Ga.* 514 [40 S. E. 779]." Principles kindred to those set forth above were discussed in *Sheppard* v. *State,* 165 *Ga.* 460 (141 S. E. 196), although that case turned altogether on whether sufficient time had been allowed for appointed counsel to prepare for trial. See *Reliford* v. *State,* 140 *Ga.* 777 (79 S. E. 1128) where there was particularly noted from *Harris* v. *State,* 119 *Ga.* 114 (45 S. E. 973), the following: "Undue haste in the administration of the criminal law is as much to be condemned as unnecessary delay. The true course lies between these two extremes. The law vests the determination of questions relating to the time of trial in the discretion of the trial judges; and this court will not interfere with their rulings on the subject, unless it is manifest that there has been an abuse of discretion." Our court has some more recent discussion of the question as 'it has arisen in different ways. *Harris* v. *Norris,* 188 *Ga.* 610 (4 S. E. 2d, 840); *Aldredge* v. *Williams,* 188 *Ga.* 607 (4 S. E. 2d, 469); *Wilcoxon* v. *Aldredge,* 192 *Ga.* 634 (15 S. E. 2d, 873); *Williams* v. *State,* 192 *Ga.* 247 (15 S. E. 2d, 219).

No case has been found exactly squaring with the facts of the present case. The truth is, not many two cases square exactly with each other. But we think the course has been laid out and

the principles stated. No new ones need be considered and no new efforts made to expand the discussion of this vital and fundamental right that exists in our organic and statute law. Neither zeal to bring to proper punishment nor wholesome desire to apprehend one guilty of so violent and outrageous a crime as that charged in the present case must be allowed to break down this guaranty, given by all States in the Union save one, and by the Federal constitution as well, and as given by Georgia in 1798. See Betts *v.* Brady, 316 U. S. 455 (62 Sup. Ct. 1252, 86 L. ed. 1116), and the historical discussion there given. The very fact that society becomes so outraged at such a crime makes it all the more necessary that this be "strictly guarded and preserved" (*Martin* v. *State,* supra), and not impinged upon.

We have reached the conclusion that the judge erred in refusing the request of the defendant for postponement, and that it was such an error as in effect deprived him of opportunity to use normal facilities and resources to procure counsel of his own choice. This violates the pertinent sections of the constitutions, supra, and the Code, § 27-403. It is true the court afforded to the accused counsel against whom no attack is made. While no bad faith is attributed to them by present counsel, and certainly not by this court, yet it must be observed that they gave him no assistance in obtaining postponement, stating that they saw "no reason not to go ahead with the trial." While it appears in the *Delk, Chivers,* and *Mc-Arver* cases, supra, and citations, that the defendant had counsel of his own choice already employed, yet these decisions clearly recognized that he was entitled to that; and we can see no difference in essentials or in effect in a case where he was prevented from procuring one of his own choice. The weakest point in the defendant's case is his failure sooner to make his request. Normally it might be said that such failure could be taken as a waiver, but in the situation here presented we can not so conclude. The defendant had been shot when arrested, transferred immediately to confinement in another county; mob violence was feared in the county of the crime; he had been told that no one would be permitted to see him except upon permission of the sheriff of the other county (he being the one who had shot him). His people had tried to see him, and had been denied permission. He did not know correctly until the day before his trial when or where his trial was to be con-

ducted. When the judge interrogated him after his case was called, and it became known that he wished a postponement, he stated that he had not the means to employ counsel and he was not able to assure the court that his people had; but many persons charged with crime have had to look to others for help. What would be more natural than that he turn to members of his family? He should have had a reasonable opportunity to do so. That was all he asked, and to refuse it was error.

*Judgment reversed. All the Justices concur, except Hewlett, J., not participating.*