STATE OF IOWA, Appellee, v. WILLIAM SLYCORD et al., Appellants.

No. 40404.

October 14, 1930.

*John F. Abegglen,* for appellants.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *Frank A. Nichol,* County Attorney, for appellee.

DE GRAFF, J.—The defendant Slycord resided with his wife in Eddyville, Wapello County, Iowa. The defendant Emanuel, 29 years old, and unmarried, boarded and roomed at the Slycord  home. The alleged liquor nuisance was maintained on premises occupied by one Mike Bakalar, a tenant, and said premises were located in the country south of Albia, Monroe County, Iowa, near primary road No. 6. Sheriff Robinson of Monroe County and his deputy Tedford, acting under a search warrant, raided the Bakalar premises on August 19, 1929, and at said time seized three barrels of mash and about a gallon and a half of whisky, commonly known as "white mule," and also found a stove, with special type burners attached, and two pieces of copper pipe or coil, together with other equipment. The liquor and the equipment seized were placed by the sheriff in a locked vault, where the seized stuff remained until the trial of the cause, at which time the liquor and equipment were introduced in evidence. It is undisputed that neither of the defendants was on the place at the time the search and seizure took place. Bakalar was arrested then and there, and placed in jail, but he was later released. On the same evening, the instant defendants were arrested and placed in jail.

At this point it may be recited that, at the time Bakalar was arrested, he was asked to whom the seized stuff belonged, and he said, "To two fellows in Eddyville." Subsequent to Bakalar's release, he accompanied Sheriff Robinson and the county attorney to the county jail, at which time the attorney

asked Bakalar, in the presence of the two defendants, "if these were the gentlemen out there, helping to operate that still?" He replied, "They were." Clearly, a jury question was presented, and unless the court erred in the rulings on certain objections to certain evidence offered by the State, and in the instructions given, the judgment entered must be affirmed.

We now turn to these objections and the rulings thereon, which are made the bases for the propositions found in appellant's brief and argument.

1. It is first contended that the court erred in permitting the witness Deputy Sheriff Tedford to testify that, at the preliminary hearing of this cause, Mrs. Bakalar stated that the  defendants were at the Bakalar place assisting in running the still, and that the defendants did not deny it. The trial court in the first instance overruled the objection, and, upon cross-examination of the witness, stated that, unless the evidence is other and different from what it now shows, the testimony will be taken from the jury. Later, the court did sustain the motion of defendants to strike this testimony. The court emphatically told the jury that they must not consider the testimony so stricken, in arriving at their verdict. Whatever error, if any, existed by reason of the court's ruling in the first instance was cured by the later ruling and the striking of this testimony from the record. Under this record, the jury must have understood that the challenged testimony was not to be considered, and we must presume that the jury respected the court's instruction.

2. Further complaint is made that the court erred in permitting the State's witness Lee Major to testify that, on the Sunday evening before the raid (August 18, 1929), he purchased  a pint of liquor at the Bakalar home, and at said time Bakalar told him that the two "fellows" there were from Eddyville.

"There were two men there. One was asleep on the floor,—I didn't see who he was; another fellow standing by the still,—I believe that was Emanuel."

The time was about 5 o'clock, and "perfectly daylight."

The appellants at that time moved to strike the statement as hearsay, and not made in the presence of the defendant. Thereupon the court inquired, "Was this defendant Emanuel present at the time?" The witness answered that he was in the other room.

"Q. Was he in a place where he could have heard it? A. The door was open between us,—just standing inside the door. The Court: Nothing to prevent him from hearing what Mike said,—what kind of tone of voice, ordinary tone of voice? A. Just like a person would be standing talking."

After the cross-examination of Major, the motion to strike was renewed, and overruled. It may be observed that the witness testified without objection that he believed the man he saw at the Bakalar house at the time was the defendant Emanuel. It is apparent that what was said by Bakalar to Major was in the presence or hearing of Emanuel,—that is, Emanuel was so close that he could have heard what was said: to wit, that he (Emanuel) was from Eddyville. In the light of the entire record, we discover no prejudicial error in the second point herein.

3. It is contended that the trial court committed error in permitting Robinson, sheriff of Monroe County, to testify that Bakalar told him that the still and liquor belonged to two fellows in Eddyville, for the reason that this state-ment was not made in the presence of the defendants. This conversation occurred at the time the sheriff arrested Bakalar. The record as shown by appellee's denial of appellant's abstract and additional abstract of the record is as follows: "I arrested Bakalar. Asked him who this stuff [meaning liquor and still] belonged to. He said, 'To two fellows in Eddyville.' " No objection or exception is noted. True, the appellant's abstract shows an objection, but, in the absence of a certification of the record by appellant to this court, the appellee's denial of the correctness of appellant's abstract and the appellee's additional abstract must be accepted, under the well recognized rule of law governing procedural matters of this character.

4. It is further alleged that the court erred in permitting Sheriff Robinson to testify as to what he found on Slycord's premises in Eddyville. The sheriff, armed with a search war-

1214

rant, searched the premises of the defendant Slycord. The record discloses that, at the time of the search, there was found a gunny sack full of empty pint bottles and a gunny sack full of the same kind of special burners as found on the cooker of the still on the premises of Bakalar. The burners were introduced in evidence. Slycord was on his own premises when the search was made. In the denial and additional abstract of appellee there is no objection noted or exception saved to the testimony under consideration. If the abstract of appellant is taken as true, the statement of appellant's attorney made at the time in question does not constitute an objection. Clearly, there is no error at this point.

5. Appellants' next proposition is to the effect that error was committed in permitting the sheriff to relate that Bakalar identified the defendants in the county jail, and to state in the presence of the defendants to the county attorney and the sheriff that "these were the gentlemen who were out there [Bakalar's place] helping to operate that still." At that time, neither of the defendants said "whether they were or weren't." The record fails to disclose any objection to this testimony. Upon the cross-examination of the sheriff it is shown that the officer did not request Bakalar to come to the county jail at that time, and furthermore, Bakalar stated to the officers, in the presence of the defendants, that they (Slycord and Emanuel) were "down there [Bakalar place] Saturday, Saturday afternoon, Saturday night, all day Sunday and Sunday night, operating that still. Part of that is right. He [Bakalar] said he didn't know what time these men [defendants] came there, but when he [Bakalar] came home from her [his wife's] folks', these men were there, cooking the stuff off." Error cannot be predicated on this phase of the record.

6. Further complaint is made in permitting witness Sprecker, a deputy sheriff of Wapello County, to testify to the purchase of three gallons of "moonshine" whisky through Slycord. This evidence was introduced as a circumstance to show the nature of the use of the premises. This witness knew the defendants, and he testified that he saw Slycord in Eddyville July 18th, and that he went there with

the intention of getting some "moonshine" whisky, but failed to get it at that time. There was no objection to this testimony. The question was then asked, "When was it?" to which reply was made, "They got moonshine whisky July 19th." At this point, counsel for defendants moved to strike the testimony, unless connected with the defendant. The motion was overruled. The witness was then permitted to answer, without objection, that he (Sprecker) got the whisky on the paved hill on the edge of Eddyville, from Roy Blackwood; that arrangements had been made with Slycord; and that the latter had told Blackwood to take his car (Slycord's), to deliver the "moonshine." No proper objection to this testimony was made. Clearly, the appellant is not now in a position to complain, for the reason that he is not permitted to gamble upon an answer and then claim error on ruling on motion to strike after the answer was given, without proper objection in the first instance. *State v. Plew,* 207 Iowa 624, 1. c. 627. The jury, under the entire record, was warranted in finding that the two defendants were acting in concert. The jury could find that the defendant Emanuel was present at the still on the Sunday night preceding the search of Bakalar's premises. It is also shown that Slycord's car was frequently seen at the Bakalar place, and that, prior to the search, Slycord had negotiations with Bakalar for the placing of mash barrels on the premises of the latter. It is also shown that Slycord was in possession of burners that were of the same type as were found and used on the cooker of the still found on the Bakalar place. The jury was justified in finding that both Slycord and Emanuel were on the Bakalar place immediately prior to the search, and that they were "cooking the stuff" on the Bakalar premises. The equipment seized at the Bakalar place is of the character that is ordinarily used in the manufacture of liquor. The last-named error relied upon by appellant for a reversal is without merit.

7. Error is based on the proposition that the court permitted the State to cross-examine the defendant Slycord relative to the liquor transaction at Eddyville, at which time three gal-

lons of "white mule" were sold to Deputy Sheriff Sprecker. The complaint is based on the ground that it was not proper cross-examination. Slycord, on cross-examination, was asked:

"Isn't this about the way of it, Mr. Slycord? This man [Sprecker] and two men came to your house on the evening of the funeral, on the evening that your wife returned, and right while they were there, your wife was brought home from Ottumwa, and afterwards you had a conversation with these men at your back door, and you got your brother, and sent him after Roy Blackwood. Roy came, and you gave him your car, and they went out and got some whisky. (Objected to as not proper cross-examination. Overruled, and excepted.)"

It appears from the record that the question asked Slycord on cross-examination was not answered. The record, therefore, stands the same as though the objection had been sustained. On the further cross-examination of Slycord, he testified that he never saw Sprecker at the time in question, and that the latter was not there when his wife came home from the funeral. He did admit that there were some fellows there when he went to bed, and that they came to the house and wanted to buy some liquor. It was for the jury to determine who was telling the truth as to this particular matter.

8. In the cross-examination of Slycord, he was asked, in connection with the Sprecker transaction, "What kind of a car did you have at the time?" This question was not answered. This question was asked Slycord, on cross-examination: "Don't you know the sheriff in Ottumwa has the car now?" to which he answered, "No." "Q. Didn't you talk to the sheriff about it? A. No. Q. About holding it? A. No, sir." Even if it be conceded that the inference may be drawn from the evidence that the car was seized by the sheriff, it is not shown for what reason or purpose. The appellant cannot claim prejudicial error based on the cross-examination of Slycord.

9. A further complaint is made by appellant that the court erred in permitting the State to introduce and examine one A. L. Fellows on rebuttal, relative to what Fellows saw and heard

 at the time Roy Blackwood was directed by Slycord to take his car and get the liquor which Sprecker wished to buy. The theory is presented by the appellant in argument that the evidence sought by the State from the witness Fellows was not rebuttal in character, and that, as Fellows's name was not indorsed on the indictment, and no notice was given, he was not competent to testify. This court cannot accept this version of the matter. The testimony of Fellows was rebuttal in character. As said in *State v. Graham*, 203 Iowa 532, l. c. 535:

"It many times occurs that testimony used in rebuttal might have been used by the State as direct testimony in the first instance; yet, if in fact it was not so used, but in reality it does rebut some of the matters testified to by the defendant or his witnesses, it should be classed as rebutting testimony."

The case of *State v. Yarham*, 206 Iowa 833, is not analogous on either the facts or the law, as in that case the State attempted to prove its entire case in chief by means of testimony rebuttal in character.

10. It is argued by appellant that the evidence is insufficient to sustain a verdict of guilty, and consequently the trial court erred in overruling defendants' motions for a directed verdict. It is sufficient to state that the evidence is amply sufficient to sustain the verdict, and the court was justified in overruling said motions and eventually entering judgment upon the verdict of the jury.

11. It is contended that the court erred in the giving of Instruction No. 8. The court told the jury in this instruction that:

"If you find from the evidence, beyond a reasonable doubt, that the defendant William Slycord made the agreement with Mike Bakalar to pay said Bakalar something to permit these  defendants to set up some barrels of mash upon the premises occupied by the said Bakalar, to be used in making intoxicating liquor, and that the defendants in this case did set up the barrels of mash on the premises occupied by the said Bakalar in Monroe County, Iowa, then each and all the persons

employed, engaged, or concerned in the plot to make intoxicating liquor would be principals in the crime, and would be liable to punishment for the crime."

The court was instructing on one phase of the case, and the evidence fully justified the giving of the instruction.

12. It is further complained that the court should have specifically told the jury that it might find one defendant innocent even though it found the other guilty. There was no request for such an instruction, but the jury was  told:

"If you do not find both defendants guilty, but do find one of them guilty, you will return the second form of verdict, which is marked Verdict No. 2."

Form of Verdict No. 2 submitted to the jury is not found in the abstract of appellant, but it is obvious from the instruction quoted above that the jury was privileged, under the evidence, to determine either one of the defendants guilty as charged, and under form of Verdict No. 1, to find both defendants guilty.

The record discloses no reversible error. The judgment entered is, therefore,—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.