STATE OF IOWA, Appellee, v. GEORGE DUNCAN, Appellant.

No. 46377.

OCTOBER 19, 1943.

1260

George Duncan, pro se.

John M. Rankin, Attorney General, Don Hise, Assistant Attorney General, and Wm. Crissman, County Attorney, for appellee.

MULRONEY, C. J.— Although this appeal is on a clerk's transcript we have chosen to review the complete record of the trial below including the transcript of testimony as certified to this court.

 The record shows a county attorney's information was filed on April 30, 1942, charging the defendant with the crime of breaking and entering "the office of the D. A. Stamy Insurance Agency in Marion, Iowa, with intent to commit a public offense, to-wit: Larceny." Thereafter the defendant, by his attorneys, Jordan & Jordan, moved to dismiss the information on the ground that the testimony of the State's witnesses, as disclosed by the minutes attached to the information, would not tend to connect the defendant with the crime charged. The defendant also moved for a bill of particulars. The motion to dismiss was overruled and the motion for the bill of particulars sustained. The State furnished the bill of particulars in compliance with the court order. Defendant then pleaded not guilty on May 4, 1942, and on the same day filed a demand for immediate trial during the then pending March term. This demand was overruled for the reason that the jury had been dismissed some weeks before, but a further hearing on the demand for immediate trial was continued by agreement of counsel until June 8, 1942.

On June 10, 1942, the demand for immediate trial was completely overruled by a court order to the effect that no jury had been called for the May term which was then in session and that this May term had for many years been an equity term only.

On July 2, 1942, Jordan & Jordan withdrew their appearance for defendant. On August 10th defendant was advised in open court of the withdrawal of his attorneys of record and he

stated that he desired time to employ counsel or to advise the court what counsel he desired appointed. On August 19th W. L. Fahey was appointed counsel for defendant at the expense of Linn county, but on the 18th day of September Mr. Fahey withdrew his appearance for defendant. On September 21, 1942, Paul V. Wilson was appointed to represent defendant, but the record shows that on the same day he withdrew his appearance as attorney for defendant, showing the court that he was otherwise engaged. The court records show that on the 22d day of September the defendant asked leave to appear pro se and the trial commenced with the defendant acting as his own counsel.

The defendant's version of what occurred on the 22d day of September just before the commencement of the trial is shown by the following quotation from a brief and argument he has filed with this court, to wit:

"On the day of my trial the presiding Judge asked me did I want counsel? I said 'yes.' County Attorney Crissman said: 'Here is attorney J. D. Patterson, he will take the case.' Right then and there I asked permission to plead my own case."

Ruth Maier, a witness for the State, testified that she was the bookkeeper employed by the D. A. Stamy Insurance Agency in Marion, Iowa. She had worked for the company about fourteen years and this office was located on the second floor at 1064½ on Seventh Avenue in Marion, Iowa. The office was reached by a stairway from the street, and about 1:30 p. m. on April 29th, when she returned to the office after lunch, she saw defendant coming from the Stamy insurance office and she saw him pass into the washroom on the same floor. After she entered the office she heard defendant leave the washroom and go down the stairs, and by looking out the window of the office she was able to see him go across the park and toward the railroad tracks. She stated that it was a hot day and that defendant was sweating profusely; that he had on a light cap and a light shirt; that he was carrying a light overcoat over his left arm, and that he had on dark blue trousers with a newspaper in his hip pocket, and had a scab on his nose and on the left side of his face. She further testified that after he passed out of sight down toward the railroad tracks she examined the office and noticed drops such as

perspiration drops around the safe, which she stated were not there when she went out to lunch. She stated that the safe was locked when she went to lunch but this merely meant closed with the dial partly turned. She opened the safe and found the contents of the cash boxes were missing. She testified that there was around $220 in the safe. There were a $2 bill and seven silver dollars in the safe. She called her employer, Mr. Sheets, and then the chief of police. When the chief of police came she described the man to him and to Mr. Sheets and she left with the chief in his car to see if they could locate the man along the tracks and Mr. Sheets went toward the railroad yards. The man was not located on this trip and she went back to the office and in about three quarters of an hour she was called down to the city hall to identify the man she had seen in the hallway.

Miss Maier's story was corroborated by the police chief to the extent that he had received his description of the man from Miss Maier and upon his second trip to the railroad yards he located defendant talking to one of the trainmen. The police chief immediately arrested him and brought him to the city hall in Marion. At the time he was arrested he had on a cap and was carrying a topcoat and had a newspaper sticking out of his hip pocket and there were scabs on his nose and cheek. The chief and other witnesses testified that the defendant had brown cotton gloves on his person, which were moist, and a $2 bill and seven silver dollars as part of $132.66 in bills and coins found on his person at the time of his arrest. An additional sum of $26.21 was found on his person sometime later when he was in jail. Mr. Sheets was with the police chief when the arrest was made in the railroad yards at Marion.

Upon defendant's person there was also found a greenish paper sack, which the operator of a five-and-ten-cent store in Marion recognized as being from his store. This store was operated under the Ben Franklin system and the sack had the Ben Franklin mark on it. A salesgirl in this store testified that she recognized the defendant as being a person who came into the store on the day of the robbery, between 11 and 12 o'clock, and purchased a ten-cent table knife, which she placed in a greenish paper sack when she passed it across the counter to him. She,

too, was able to identify him because of the cap and the scabs on his face. A deputy sheriff testified about finding a table knife with scratches on it near the railroad tracks sometime after defendant was arrested, and several witnesses testified that the office door of the insurance agency bore scratches, which appeared to be fresh, near the Yale lock, indicating that the door had been opened by inserting an instrument such as a knife under the doorstop in the vicinity of the lock. The same storekeeper who identified the paper sack as being from his store testified the table knife was similar to table knives he carried in stock and he knew of no other store in Marion handling such knives. Other witnesses testified to seeing defendant on the street in the vicinity of the Stamy office and in the vicinity of the railroad yard. A deputy sheriff testified there were no fingerprints on the safe.

Defendant took the witness stand in his own defense and was allowed, without objection, to give a long rambling statement which did little to explain the various links in the chain of evidence against him. His only explanation of the money he had on his person was that he had won it in a poker game in Omaha. He was asked if he had ever been convicted of a felony and after his affirmative reply the court refused to allow the county attorney to question him as to the number of such convictions. Testimony of the number of convictions would have been admissible. State v. Hall, 233 Iowa 1268, 11 N. W. 2d 481. He complained that the county attorney asked this question twice, but this was made necessary by reason of his statement that he did not know the meaning of the word felony. The county attorney merely asked the question again after correctly advising him that a felony was an offense punishable by imprisonment in a prison or penitentiary.

We have examined the record with care and we cannot find where any advantage was taken of the defendant. The transcript shows that the trial court protected him when protection was necessary, and the county attorney did not attempt to introduce objectionable evidence. It is quite apparent that defendant could have had counsel to represent him if he had so desired.

We have also examined the court's instructions, which were,

we feel, fair to defendant, and upon the whole record we find no error. The judgment is therefore affirmed.—Affirmed.

GARFIELD, HALE, MILLER, BLISS, SMITH, MANTZ, and OLIVER, JJ., concur.

WENNERSTRUM, J., dissents.

WENNERSTRUM, J. (dissenting)—I am unable to concur in an affirming opinion in this case. It is my conclusion that the facts set forth in the clerk's transcript alone justify a reversal upon the ground that the appellant did not have a fair trial, such as is guaranteed to him by the Constitution of the State of Iowa, in that he did not have the assistance of counsel at the time of his trial. The facts relative to his appearance at the trial of this case without counsel are correctly set forth in the affirming opinion.

The question that is uppermost in the mind of the writer of this dissent is whether or not, under all the circumstances, it can be said that the appellant, appearing for himself, in the trial was afforded that degree of protection that our State Constitution gives to an individual charged with a crime.

Article I, section 10, of the Constitution of Iowa provides:

"In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to a speedy and public trial by an impartial jury * * * and, *to have the assistance of counsel.*" (Italics supplied.)

In the instant case the appellant did not have the aid of counsel, and because of that fact, regardless of all the circumstances that may have preceded his trial, it is the conclusion of this dissenter that his constitutional rights were violated and that any judgment entered in a proceeding under the circumstances disclosed by the record necessarily should be declared void. The first attorney that the appellant had was dismissed by him and the record discloses that thereafter two attorneys withdrew their appearance for defendant after they had accepted an appointment made by the court for the purpose of assisting the appellant in presenting his defense. As further shown by the affirming opinion, the county attorney, at the time of the

trial, and in open court, stated to the defendant that there was an attorney present who would take his case. The appellant, in commenting on this situation stated, "right then and there I asked permission to plead my case." The fact that the appellant, under these circumstances, asked permission to plead his own case does not, in the opinion of the writer of this dissent, constitute a waiver of his constitutional rights. It was the duty of the court to fully advise the appellant as to his right of counsel and to fully inform him as to the effect of any waiver of that privilege. The record does not disclose that the court in any manner advised the appellant as to the right that was his to have an attorney appear for him. I think the court should have fully advised the appellant of his constitutional rights.

The statement made in the case of Walleck v. Hudspeth, 10 Cir., Kan., 128 F. 2d 343, 345, seems applicable to the circumstances as here related. It was there stated:

"To offer to appoint counsel upon condition, however, that the trial proceed at once, is in effect denying the right of counsel. Under such conditions, an attorney could render no effective aid or assistance to the defendant."

In the recent case of Adams v. United States, 317 U. S. 269, 279, 63 S. Ct. 236, 241, 87 L. Ed. 268, 143 A. L. R. 435, the Supreme Court of the United States held that where a defendant without counsel waived the right to a trial by a jury a conviction could be upheld. However, in this last-cited case that court, speaking through Justice Frankfurter, said:

"The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive

his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. Johnson v. Zerbst, 304 U. S. 458, 468-69.''

It may be suggested that statements attributed to appellant as to his willingness to appear for himself constitute a waiver. However, in connection with this particular question, the Supreme Court of the United States, in the case of Glasser v. United States, 315 U. S. 60, 70, 71, 62 S. Ct. 457, 465, 86 L. Ed. 680, speaking through Justice Murphy, made this statement:

"To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every reasonable presumption against the waiver of fundamental rights."

In connection with this question of waiver, it is further stated in this last-cited case as follows:

"Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. Speaking of the obligation of the trial court to preserve the right to jury trial for an accused, Mr. Justice Sutherland said that such duty 'is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.' Patton v. United States, 281 U. S. 276, 312–313 [50 S. Ct. 253, 263, 74 L. Ed. 854, 70 A. L. R. 263]. The trial court should protect the right of an accused to have the assistance of counsel. 'This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.' Johnson v. Zerbst, 304 U. S. 458, 465 [58 S. Ct. 1019, 1023, 82 L. Ed. 1461].''

There are numerous authorities which support the contention of this dissenter. I shall not quote from them, inasmuch as

I have no desire to present a lengthy dissent. However, the fact that statements from these cases are not set forth does not indicate a lack of conviction as to their applicability. They are as follows: Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461; Evans v. Rives, 75 App. D. C. 242, 126 F. 2d 633; Thomas v. District of Columbia, 67 App. D. C. 179, 90 F. 2d 424; Wood v. United States, 75 App. D. C. 274, 128 F. 2d 265, 141 A. L. R. 1318; Walker v. State, 194 Ga. 727, 734, 22 S. E. 2d 462, 466, 28 S. E. 2d 656; Powell v. State of Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527.

It is to be regretted that, upon a record such as is presented in this case, an affirmance can stand. It is the duty of an appellate court to consider fearlessly and impartially the matters that are before it. It should not put its approval upon a conviction unless it is satisfied that the trial of the appellant has been of the fair and impartial nature that our State Constitution contemplates. The following statement made by the Georgia Supreme Court, in the case of Walker v. State, supra, seems quite applicable in this case:

"Neither zeal to bring to proper punishment nor wholesome desire to apprehend one guilty of so violent and outrageous a crime as that charged in the present case must be allowed to break down this guaranty, given by all States in the Union save one, and by the Federal constitution as well, and as given by Georgia in 1798. See Betts v. Brady, 316 U. S. 455 (62 Sup. Ct. 1252, 86 L. ed. 1116, and the historical discussion there given. The very fact that society becomes so outraged at such a crime makes it all the more necessary that this be 'strictly guarded and preserved' (Martin v. State, supra), and not impinged upon."

The record further shows that on December 31, 1942, an attorney was appointed to conduct an appeal for this appellant. It is also shown by the clerk's transcript that on January 6, 1943, the attorney named to appeal the case for appellant withdrew his appearance.

I would reverse the judgment of conviction and remand the case for a new trial. I am satisfied that upon retrial counsel can be found, who, under the appointment of the court, will

properly and effectively represent appellant in the trial of the case. The fact that the appellant was not given the full protection that he is entitled to by one of the courts of this state, in my judgment, constitutes reversible error.