STATE OF IOWA, appellee, v. JAMES CLYDE MEEKS, alias L. H. STONE, appellant.

No. 48480.

(Reported in 65 N.W.2d 76)

JUNE 15, 1954.

1234

James Clyde Meeks, pro se.

Leo A. Hoegh, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Richard M. Ackley, County Attorney, of Ottumwa, for appellee.

LARSON, J.—The defendant, James Clyde Meeks, alias L. H. Stone, was indicted on the tenth day of November, 1953, by the Wapello County Grand Jury charged with the crime of uttering a forged instrument with intent to defraud, in violation of section 718.2 of the 1950 Code of Iowa. The facts are not in great dispute. Defendant had opened a checking account in The Farmers and Merchants Savings Bank of Ottumwa, Iowa, on or about October 15, 1953, and had made deposits of $430 and one withdrawal of $300 prior to October 23, 1953. On the morning of that date he made a second withdrawal by check made payable to cash of $125, leaving a balance in his account of only $5.00. Just before closing hours on the same day he deposited to his account a check in the amount of $415 which was dated October 21, 1953, made payable to L. H. Stone, drawn on the Burlington Bank and Trust Company of Burlington, Iowa, and purportedly drawn and signed by one W. H. Barton. The receiving teller's suspicions were aroused, and a telephone call to the Burlington bank confirmed the fact that no person by the name of W. H. Barton had an account there. Peace officers were notified and they assembled at the Ottumwa bank the next morning to investigate the matter. At about 9:30 a. m. defendant came to the bank, withdrew $300 in small bills by issuing a check for cash for that sum. After leaving the bank defendant was apprehended and invited to the police station for questioning. From the method of operation he was suspected of being a wanted false check artist. A search of his person revealed that he had some $976 in his pockets and pinned in

various places on his underclothing. Among his effects was a key to a locker at the Ottumwa bus depot. The locker contained a grip which was brought to the station and opened in defendant's presence. In addition to clothing it contained various instruments used by a typical check artist and they appear herein as Exhibits P-15 through P-36 inclusive. They will be referred to later. The defendant had on his person a tear-gas gun, and he tried to destroy some already-prepared checks and a deposit slip for another Ottumwa bank. These items included a check to Stone from one B. D. Miller for $375 drawn on the Burlington Bank and Trust Company, appearing as Exhibit P-5, a deposit slip for the Fidelity Savings Bank of Ottumwa as Exhibit P-6, and a check drawn for cash on said bank in the sum of $250 as Exhibit P-7. They had not yet been presented at the Fidelity Savings Bank.

On the twelfth day of November defendant appeared in court for arraignment, and as he was without counsel he was given a copy of the indictment and informed by the court of his right to have counsel appointed for him. He declined, stated he was charged under his true name, and entered his plea of not guilty. The cause was then assigned for trial on November 23, 1953. On November 18, 1953, defendant having failed to obtain counsel was brought before the court, where he stated that if he could not have one Charles Bookin appointed as his counsel, the said Bookin being scheduled to start another specially assigned case at Fairfield at that time, and that "if he could be furnished with photostatic copies of" certain checks, he "wished to conduct his own trial and did not desire the court to appoint any counsel for him." The requested copies were furnished defendant, acknowledged by his signature in the record, and the trial opened as scheduled on November 23, 1953.

Defendant at that time presented a motion for a change of venue and a motion for a continuance, both of which were overruled by the court. The State presented its evidence, and the defendant quite ably defended himself and presented his objections and preserved his exceptions. However, his motion for a directed verdict at the close thereof was overruled. De-

fendant then did not take the stand nor call any witnesses, but did introduce one Exhibit D-1 which was a photostatic copy of a signature card signed by him at the time he opened the account in the Farmers and Merchants Savings Bank in Ottumwa, Iowa.

After the court had given its instructions, which were not objected to by the defendant, the jury retired and shortly returned a verdict finding the defendant guilty as charged. Defendant's motion for a new trial, as well as a later motion to modify the court's judgment sentencing defendant for an indeterminate period not to exceed ten years in the Iowa State Men's Penitentiary at Fort Madison, Iowa, were overruled, and he is now incarcerated in that institution. He lists eighteen assignments of error and fails for the most part to state propositions and list authorities in his brief and argument, of which the State complains, but we feel under the conditions his contentions are argued with sufficient clarity to warrant and deserve our consideration. Such assignments as we consider of merit we will discuss.

I. Perhaps defendant's principal contention is found in his fifteenth and sixteenth assignments wherein he maintains that the State failed to prove that he uttered a forged check as charged in the indictment. He argues that "to constitute the offense of 'uttering a forged check' the proof must show the check is drawn on an ACTUAL account, that the check was written without authority of the person whose name is forged, and, with intent to defraud thereby." He reasons that because W. H. Barton, the purported and unknown drawer of the check on the Burlington bank, was not a depositor, the check cannot be classified as a forgery but must be classified as a false check within the meaning of section 713.3, Code of Iowa, 1950. He argues that if the State's evidence is to be believed and it is determined that he wrote the entire $415 check himself including the indorsement, he would be guilty of no worse offense than the false drawing or uttering of a check, and that he may assume any name he wishes, including Stone, Barton or Miller. It may be conceded that the acts done could also have constituted another offense than the one charged by the State, but

with that question we are not here concerned. He was charged with the violation of section 718.2 of the Code of Iowa, 1950, which provides as follows:

"If any person utter and publish as true any record, process, certificate, deed, will, or any other instrument of writing mentioned in section 718.1, knowing the same to be false, altered, forged, or counterfeited, with intent to defraud, he shall be imprisoned in the penitentiary not more than ten years, or imprisoned in the county jail not exceeding one year, or fined not exceeding one thousand dollars."

Forgery has been defined to be the false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. State v. Sherwood, 90 Iowa 550, 58 N.W. 911, 48 Am. St. Rep. 461; State v. Van Auken, 98 Iowa 674, 68 N.W. 454. Also see 37 C. J. S., Forgery, section 1, page 31; 23 Am. Jur., Forgery, section 2, page 676.

We have also said many times that "forgery" and "uttering a forged instrument" are separate and distinct crimes. See State v. Solberg, 214 Iowa 333, 242 N.W. 84; State v. Blodgett, 143 Iowa 578, 121 N.W. 685, 21 Ann. Cas. 231; State v. McCormack, 56 Iowa 585, 9 N.W. 916.

It is well settled in most jurisdictions, including Iowa, that the offense of "forgery" may be committed even though the name used be an *assumed* or fictitious one when it is also shown that it was used with the intention to defraud. See 37 C. J. S., Forgery, section 10, page 39. We so held in McCornack v. Central State Bank, 203 Iowa 833, 211 N.W. 542, 52 A. L. R. 1297, and in American Express Co. v. Peoples Savings Bank, 192 Iowa 366, 181 N.W. 701, stating in effect that the alleged name need not be that of any person in existence to constitute "forgery." In this connection, however, the evidence disclosed that one William H. Barton of New London, Iowa, had had an account with the Burlington bank during the years of 1937 and 1938, but it was closed at his death in March 1938. This contention of defendant is best answered, however, by our pronouncement in State v. Sherwood, supra, later quoted with approval in State v. Carter, 222 Iowa 474, at 477, 269 N.W. 445. We said:

■ "The offense of uttering and publishing is proved by evidence of offering to pass the instrument to another person, declaring or asserting, directly or indirectly, by words or actions, that it is good."

Also see State v. Weaver, 149 Iowa 403, 128 N.W. 559, 31 L. R. A., N. S., 1046, Ann. Cas. 1912C 1137; State v. Sherwood, supra; State v. Calkins, 73 Iowa 128, 34 N.W. 777.

■ ■ Here then defendant offered to pass and did pass the check for $415 knowing that it was not good, that it was not what it purported to be, namely, an instrument drawn by one person to the order of another, and that it was issued with an intent to defraud, first by obtaining credit and later cash from the bank. Here the defendant obtained $300 cash from the bank by cashing a check on a valueless credit known to be such when the deposit was made.

II. We said in State v. Weaver, supra, that under this statute, formerly section 4854, Code of 1897, it is not essential that the instrument be actually transferred to or be accepted by another as genuine, it being sufficient that such instrument be offered as genuine with intent to defraud. Also see State v. Calkins, supra. Thus we see it mattered not that the check had been deposited for collection as contended by the defendant. His later acts of trying to obtain money on the strength of that deposit before in the usual course of trade it could be discovered that it was valueless was material evidence of the fact that it was offered as genuine with the intent to defraud. In Taylor v. State, 65 Okla. Cr. 432, 88 P.2d 665, the rule is laid down, and we subscribe to it, that when a check is indorsed and deposited in a bank for collection, and the title to the same remains in the depositor, the bank merely acting as an agent for the depositor for the purpose of collection, it has no application to criminal cases, especially where one is charged with uttering and passing a forged instrument, as in the case before us.

Sufficient and competent evidence was introduced by the State upon which the jury could find that the defendant drew the check and signed the name W. H. Barton as maker. The bank officials, knowing the defendant as L. H. Stone, accepted

the check for $415 and entered it in his passbook as an instrument which on its face purported to be an order of one person to a bank for the transfer of money to another. It was not what it appeared to be and what it was purported to be. Whether defendant assumes both names or not is immaterial; one of them purported to be another and separate person, and to this extent the signature of that person on the instrument was forgery. It was uttered as a forged instrument and was clearly for the purpose of defrauding the bank.

■ III. Defendant assigns as error the court's acceptance of the testimony of the State's witness M. D. Huffman for the reason that by oversight his name was not indorsed upon the back of the indictment as required by section 772.3, Code of Iowa, 1950. When the oversight was called to the court's attention by defendant's objection, and it appeared that the witness Huffman had been before the Grand Jury and the minutes of his testimony appeared therein, the court ordered the clerk to affix the name of Mr. Huffman on the back of the indictment and also upon the copy in the hands of defendant. This we have held proper, for defendant in no way was taken by surprise or prejudiced by the testimony of one whose testimony appears as minutes attached to the indictment. See State v. Craig, 78 Iowa 637, 43 N.W. 462; State v. Story, 76 Iowa 262, 41 N.W. 12; State v. Bige, 198 Iowa 573, 198 N.W. 510, and cases cited therein. The rule in Iowa as laid down therein is that under section 772.3, Code of Iowa, 1950, when names of witnesses who were examined before the Grand Jury were not indorsed thereon, the failure to so indorse 'the names was not a ground for excluding their testimony upon the trial of the case, even though perhaps a motion to set aside the indictment might have been good under subsection 2 of section 776.1 of the Code of Iowa, 1950. No such motion was made herein.

■■ IV. Defendant complains of the court's ruling denying his motion for a continuance offered when the trial opened, the jury had assembled, and the State had announced it was ready to proceed; also in denying his motion for a change of venue. We have repeatedly held that such matters are committed to the sound discretion of the trial court and we will

not interfere unless it be shown that the trial court abused its discretion. See State v. Hathaway, 224 Iowa 478, 276 N.W. 207; State v. Papst, 221 Iowa 770, 266 N. W. 498; State v. Pell, 140 Iowa 655, 119 N.W. 154. Section 780.2, Code of 1950, provides that the same rules govern applications for continuance in criminal as in civil cases. Under rules 182 and 183, Rules of Civil Procedure, continuance may be allowed for any cause not growing out of the fault or negligence of the applicant, and must be supported by affidavit of the party, his agent or attorney, which discloses the names and addresses of desired witnesses, what efforts constituting due diligence were made to secure that testimony, and what is expected to be proved by such testimony. Here the motion merely requested a continuance because of the absence of "certain witnesses * * * whose name or names and residence are unknown" to him, that he had inquired by telephone to locate such witness, and that the handwriting on the check in issue was not that of the defendant. We agree with the trial court that the motion was not timely nor adequate and conclude that there was no abuse by the trial court of its discretion to overrule both this one and the motion for a change of venue. There is nothing shown to indicate any prejudice locally against the defendant herein.

V. Three of defendant's assigned errors have to do with claimed violation of due process, none of which was raised in the trial below. We have said repeatedly that we will not consider constitutional questions which were not specifically raised in the trial court. State v. Walters, 244 Iowa 1253, 1261, 58 N.W.2d 4, and cases cited therein. Martin Bros. Box Co. v. Fritz, 228 Iowa 482, 292 N.W. 143; State ex rel. Seeburger v. Johnson, 204 Iowa 150, 214 N.W. 594. Defendant complained that he was forced to go to trial without the benefit of counsel. It appears without question in the record that he waived counsel when he discovered Mr. Bookin was not available and that the court would require him to pay his own court-appointed counsel. It was then that he refused counsel and, knowingly and understandingly, elected to conduct his own trial. Defendant of course may waive his right to counsel. State v. Duncan, 233 Iowa 1259, 11 N.W.2d 484; Korf v. Jasper County, 132 Iowa

682, 108 N.W. 1031; 23 C. J. S., Criminal Law, section 979, pages 316, 317. There were no circumstances to show that defendant was misled or denied his rights in this regard and we find no reversible error in this assignment.

VI. There was further complaint made as to the relevancy and competency of the testimony of M. D. Huffman. Huffman was qualified as the handwriting expert of the Iowa State Bureau of Investigation. He testified that he was present when the defendant was apprehended, that he interrogated him, and that he had carefully examined the handwriting on State's Exhibits P-1, P-2, P-3 and P-4 and had concluded that the same hand had written them all. Exhibit P-1 was the check upon which the charge was based and P-2, P-3 and P-4 were the withdrawal checks in Stone's account. He further related that the defendant had admitted to him that he had written P-2, P-3 and P-4 and indorsed the name of Stone on P-1. This testimony was corroborated by two other officers. While we note that the testimony of the witness had been concluded and the evidence received before any motion was made to strike it as hearsay, yet we are certain that this was on its merit not hearsay evidence.

Of course the rule is clear that a defendant may not gamble on an answer to a question and then claim erroneous ruling on a motion to strike after the answer is given. State v. Hughey, 208 Iowa 842, 226 N.W. 371; State v. Slycord, 210 Iowa 1209, 232 N.W. 636; State v. Gasperavich, 231 Iowa 11, 300 N.W. 638; State v. Crouch, 130 Iowa 478, 107 N.W. 173.

The testimony of Huffman to the effect that defendant had admitted to him that defendant had written Exhibits P-2, P-3 and P-4 was sufficient to warrant the admission of these exhibits as standards of comparison in connection with the question of the handwriting on Exhibit P-1, the check in question. State v. Debner, 205 Iowa 25, 215 N.W. 721, and cases cited therein. All testimony in regard to handwriting, except in cases where the witness saw the document written, necessarily involves comparison. We believe the standard of comparison here was adequately established and was competent evidence tending to prove that defendant had written the forged check

presented to the Farmers and Merchants Savings Bank on October 23, 1953. It is sufficient to satisfy the provisions concerning such evidence. See section 622.25, Code of Iowa, 1950. For a complete and exhaustive opinion relating to opinion evidence, see Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, 654, where Judge Bliss said:

"We have permitted opinion testimony in many cases on matters with which jurors might have some familiarity, but where the witness, because of his greater knowledge, experience, and familiarity with the subject, might be of help to them."

Here then Huffman's evidence established the standard of comparison as to defendant's genuine writings and, by his opinion and explanation of distinguishing characteristics, also aided the jury in its determination of whether or not defendant wrote the check in question for $415. There was no error in accepting the testimony of this witness.

VII. Other exhibits were admitted to help the jury identify defendant's writing and for the purpose of showing his intent to defraud the bank in this transaction. Exhibit P-16 was a box of tear-gas shells together with two tear-gas gun adapters, found in appellant's grip. Exhibits P-17 and P-18 were an envelope and letter together with some advertising matter concerning tear-gas guns and equipment. Exhibits P-19, P-20, P-21, P-22, P-23, P-24, P-32 and P-35 were several books of blank checks on various banks and a passbook with the Fidelity Savings Bank of Ottumwa, Iowa, in the name of L. H. Stone. These were also found in appellant's grip. Exhibits P-25, P-27, P-28, P-29 and P-30 were four rubber stamps and an ink pad, one of said stamps being a dating stamp, two of said stamps having names of business firms imprinted thereon, and the fourth being a pay roll stamp. Exhibit P-26 was a Plumber's Union card, the name on which was illegible. Exhibit P-31 was a passbook with the Farmers and Merchants Savings Bank, Ottumwa, Iowa, in the name of L. H. Stone. Exhibit P-33 was a deposit receipt holder from the Plaza Bank, St. Louis, Missouri. Exhibit P-34 was appellant's billfold in which was found Exhibit P-9, a Missouri Operator's License issued to James C. Meeks. And Exhibit P-36 was a receipt book.

The test of admissibility of evidence is whether it has a legitimate bearing upon any point in issue, and should not be excluded because it shows or tends to show the commission of another crime. State v. Williams, 245 Iowa 494, 62 N.W.2d 742; State v. Rand, 238 Iowa 250, 25 N.W.2d 800, 170 A. L. R. 289; State v. Rounds, 216 Iowa 131, 248 N.W. 500; 22 C. J. S., Criminal Law, section 683, pages 1091, 1092; II Wigmore on Evidence, section 238, page 36; 20 Am. Jur., Evidence, section 310, page 289. The court refused to admit such exhibits until the State first presented substantial evidence which, if believed by the jury, would connect the defendant with the crime charged. Some objections were raised by the defendant as to the statements of the court to counsel, in effect deferring a final ruling on the acceptance of the exhibits, but we find no error in either the language or propriety of its use by the trial court on the question of admissibility of the exhibits which would amount to reversible error, or prejudice the defendant.

There are other assignments, such as a failure to subpoena three witnesses requested by the defendant. They were already under subpoena and were available in the courtroom, but defendant did not call them. We have reviewed the record carefully and each and every ruling of the court, but find therein no reversible error. We have examined the court's instructions which we find fair and complete. The trial court correctly denied defendant's motion for a directed verdict at the close of the State's testimony, and also defendant's motion for a new trial. There was ample substantial evidence introduced by the State from which the jury, in its province of determining questions of fact, could find that the defendant had uttered and passed the forged check for $415 with intent to defraud. This being its determination and no reversible error appearing, the judgment must be affirmed.—Affirmed.

All JUSTICES concur.