THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEO LEWINGER, Plaintiff in Error.

*Opinion filed December 21, 1911.*

FORGERY—*altering marginal figures of a check to correspond with written amount is not forgery.* Altering the marginal figures of a check to make them correspond with the amount expressed in written words which are not ambiguous or uncertain is not forgery, as the written words, under section 17 of the Negotiable Instrument act of 1907, control the amount of the check, and the alteration does not change the legal effect of the instrument.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

HENRY ROTH, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN E. W. WAYMAN, State's Attorney, (THOMAS MARSHALL, JOHN FLEMING, and F. L. FAIRBANK, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, Leo Lewinger, was found guilty by a jury on the third count of an indictment for forgery charging him with passing as true and genuine, a false, forged and counterfeit check or order for the payment of money. The court rendered judgment on the verdict by sentencing him to the penitentiary.

The following is a copy of the material portion of the check alleged to have been forged:

"The National Bank of the Republic.
"Pay to the order of Leo Lewinger................$2500/00
twenty-five hundred and no/100......................dollars."

Stamped across the face and indented through the paper so as to be read from either side were the following words and figures: "Not over $2500$." The evidence for

the prosecution was that the check as originally made out and delivered to Lewinger was the same as when he passed it, except that the figures after the dollar mark were "25," with two ciphers, indicating $25; that the defendant presented the check to a saloon-keeper in its present form, with the figures changed so as to indicate $2500; that the saloon-keeper deposited it, with other items, in the Union Bank and drew his check for $2500, which he received and gave to the defendant.

The question in the case is whether such a change is a material alteration of a check so as to change its character and legal effect and make it a check for a different amount than the sum payable as originally drawn. The first paragraph of section 17 of the Negotiable Instrument act (Laws of 1907, p. 406,) fixes the law of this State on that subject, and is as follows: "Where the sum payable is expressed in words and also in figures and there is a discrepancy between the two, the sum denoted by the words is the sum payable; but if the words are ambiguous or uncertain, reference may be had to the figures to fix the amount." In this check the sum payable was expressed in words and was "twenty-five hundred dollars," and the words were neither ambiguous nor uncertain, so that the sum payable was $2500. The alteration of the figures, therefore, did not change the legal effect of the instrument. That was the law as established before the passage of the Negotiable Instrument act. The question whether the figures in a school order for the payment of money were a material part of the order arose in the case of *Langdale* v. *People,* 100 Ill. 263, upon an objection to the introduction in evidence of the order on account of a variance from the instrument described in the indictment. The order was for $36, and it also bore upon its face the dollar mark and figures representing that amount. The indictment set out the order *in hæc verba* and omitted the "$36.00." It was held that the figures were no part of the order, and the court

said: "Where the words used in the body of a note or order for the payment of money are ambiguous, so that there is uncertainty in regard to the true amount that was intended, resort may be had to the figures in the margin of the instrument for the purpose of determining the true amount agreed to be paid, as held in *Riley* v. *Dickens,* 19 Ill. 29, and *Corgan* v. *Frew,* 39 id. 31. But the figures in the margin of an instrument are not strictly a part of the contract. They cannot be reverted to to impeach the amount named in the body of the paper, and are never resorted to for any purpose unless there is uncertainty in regard to the amount written in the body of the instrument." The substance of that decision is now embodied in the Negotiable Instrument act, and as there was no uncertainty in the amount written in the body of this check, the figures as originally written could not be resorted to to change its effect or meaning. Other courts have held that an alteration of marginal figures on a check in which the amount payable is plainly expressed in words is not forgery. (*Wilson* v. *State,* 85 Miss. 687; *Jackson* v. *State,* 72 Ga. 38; *State* v. *Lotono,* (W. Va.) 58 S. E. Rep. 621; *State* v. *Means,* 47 La. Ann. 1535.) A contrary rule was adopted in *Commonwealth* v. *Hyde,* 94 Ky. 517, where a check was given for seventy cents, with marginal figures of "$70/100." The figure "3" was inserted between the dollar mark and the "70/100." The Attorney General is of the opinion that the Supreme Court of West Virginia in disapproving of that decision was not correctly advised in saying that it stood alone, and he says that the same doctrine was held in *Lawless* v. *State,* 114 Wis. 189. The Supreme Court of Wisconsin cited the Kentucky case as a similar one, but we do not regard them as of the same nature. A check was given to George Lawless intended to be for $9.50 for transportation to Wisconsin, and was written in this form: "Pay to George Lawless or order $9.... fifty cents,....Dollars." When the check was presented it

had been changed by putting in the figure "5" before the figure "9," which made the check read "$59....fifty cents," instead of "$9....fifty cents." There the amount payable was expressed in figures and words, and the change seems to us quite different from the change of marginal figures in the Kentucky case. The most that can be said here is, that if there had been no change in the figures the party who took the check might have noticed the discrepancy and been led to make inquiry what the intention of the maker was, but the fact is that the maker of the check merely made a genuine check for a larger sum than was intended.

The judgment is reversed.              *Judgment reversed.*