STATE OF IOWA, Appellee, v. SHERMAN CARTER, Appellant.

**FORGERY: Material Alteration.** The alteration, with intent to defraud,
1 of a contract under which a party agrees to give a first mortgage on property, by erasing the word "first," constitutes forgery.

**CRIMINAL LAW: New Trial—Failure to Produce Known Material**
2 **Testimony.** A defendant in a criminal prosecution may not have a new trial in order to produce material testimony which was at all times within his reach.

*Appeal from Guthrie District Court.*—H. S. DUGAN, Judge.

JUNE 21, 1921.

REHEARING DENIED OCTOBER 1, 1921.

THE defendant, having been indicted and convicted on charge of feloniously forging and altering a written contract, appeals.—*Affirmed.*

*Brammer, Seevers & Hurlburt,* for appellant.

*Ben J. Gibson,* Attorney General, and *B. J. Flick,* Assistant Attorney General, for appellee.

WEAVER, J.—The defendant submits his appeal to this court upon the following propositions:

I.　He contends that the evidence offered upon the trial is insufficient to sustain a verdict of guilty. Briefly stated, the charge made against the defendant is that, having entered into a written contract for the purchase of land from George Roads and others, who held the title as tenants in common, and having, by the terms of such contract, agreed to secure certain deferred payments by first mortgage on the property purchased, he afterward feloniously forged and changed said writing by erasing therefrom the word "first," thereby materially altering the meaning and legal effect of the agreement witnessed by said instrument.

We are not prepared to sustain the objection. It is true that there is no direct evidence by any witness who claims to have seen the act; but it is, of course, too well settled to call for argument or authority that a conviction of a public offense may be had, and very often is had, upon convincing circumstantial evidence. There is direct evidence by several witnesses that the word "first" or "1st" was written into the contract immediately before the word "mortgage," and that such was its form at the time it was executed by the parties, and that later, after its execution and after the deal was closed, it was discovered that the word "first" (or "1st"), before the word "mortgage," had been erased by someone. There was also evidence tending to show that, after the contract was signed, and just before the deal was closed by the initial payment and delivery of the deed, the defendant had the contract in his possession for a brief period, when not in the presence of the other parties, thus affording him an opportunity, if so disposed, to make the erasure. It also appears that defendant procured the money enabling him to make the purchase, by obtaining a loan on the land to the amount of $20,000. Of this sum, he used $14,900 in making the down payments on the contract, and gave his six promissory notes, aggregating $15,000, for the deferred payments secured by mortgage on the same land. It was, therefore, to his interest to satisfy the party making him the large loan that the mortgage given to secure it was a first lien; and the erasure made in the contract of purchase would tend to that end. No

other person, so far as shown, had the slightest interest in changing or modifying the terms of the contract. Proof of motive alone or interest alone is, of course, not sufficient to sustain a charge of crime: it is, nevertheless, a very material circumstance, which the jury may properly consider, in connection with all other evidence having any legitimate tendency to establish the offense charged.

The admitted facts in the case are somewhat redolent of the odor of ''high finance'' which has characterized much of the recent era of real estate speculation. By availing himself of its methods, the defendant was enabled to buy a farm worth, in round numbers, $30,000, not only without paying a dollar out of his own pocket, but reaping therefrom an immediate cash harvest of about $5,000, and then was ready to pass on, trusting to his luck and skill to make some turn by which his nominal equity in the land might be transmuted into coin of the realm. These things are not mentioned as being evidence of the defendant's guilt of the forgery charged, but they serve to indicate the atmosphere surrounding the business transaction in which the contract had its origin, and the weakness of the moral restraints likely to be felt by one engaged in ''putting over'' a deal of this nature. We think the evidence as a whole is clearly sufficient to warrant the trial court in submitting the case to the jury.

II. The appellant next objects that the alleged change made in the contract is of a trivial and immaterial character, and that, even if made by defendant, it does not constitute forgery, in the sense forbidden by the statute.

1. FORGERY: material alteration.

The objection is without merit. It is, of course, true that not every unauthorized change in the words of a written contract constitutes a forgery; but a change so wrongfully made, which has the effect of making another and different agreement than was expressed in its original form, or of increasing or decreasing the obligation assumed by the parties thereto, cannot be said to be immaterial; and, if done with intent to defraud, it comes within the condemnation of the statute. That the false making of the change charged in the indictment in this case is forgery, cannot be doubted. If a person undertakes to extend credit to another, upon the written

agreement of the latter to secure the creditor by mortgage upon a given piece of property, the inclusion or omission of the word "first," in description of the security, may make all the difference between a security which is entirely good and one which is entirely worthless. This seems to be too clear to admit of discussion, and the trial court did not err in refusing to direct a verdict of acquittal, on the ground that the alleged alteration was immaterial.

III. The foregoing conclusions cover all the points made in appellant's brief, upon the issues. In addition thereto, he assigns error upon the overruling of his motion for a new trial.

2. CRIMINAL LAW: new trial: failure to produce known material testimony.

What we have already said sufficiently disposes of this motion, except as to that part which is based on the ground of newly discovered evidence. Passing the question whether such motion is allowable in a criminal case, we come directly to the showing made as to the alleged new evidence. It consists of two written statements, bearing date of February 20, 1919. Both are in the handwriting of the defendant, one being subscribed by Ella Johnson and the other by George Roads. These persons are two of the five tenants in common who sold the land to defendant. The first writing, signed by Mrs. Johnson, is an acknowledgment that the mortgage made by Carter to secure the deferred payments to her "is subject to a first mortgage to make cash payment and improvements." The second paper, signed by George Roads, agrees that Carter shall have the right to place a first mortgage on the farm, to make cash payments and improvements. He also adds that he is the agent of John Roads, with power to act in his behalf. These papers were not produced on the trial to the jury. The trial took place in October, 1919.

In support of his motion, the defendant became a witness, and testified that he was arrested in Oklahoma upon warrant under this indictment on April 5, 1919, and brought at once to Iowa, and had been confined in jail during all the time from that date until the trial, in October; that he did not know the nature of the charge against him until after reaching Iowa; that these papers were left at his Oklahoma residence, and for that reason were not available for use by him on the trial to the

jury; and that he did not succeed in obtaining them until the day his testimony was given, although he asserts that he had been continuously writing his agents and servants in Oklahoma, telling them where to look for said papers and to send them to him. He says he informed his counsel of their existence and of their character. He adds, in closing his testimony, that he has twice been convicted of felony in the courts of this state.

That these written statements were material and competent testimony is at once apparent. That appellant and his counsel knew of their existence and material character is not denied. Six months intervened between his arrest and trial. On the trial, there was no evidence offered on the part of appellant of the existence of such documents, or of their loss, or of their contents. No application was made for a continuance, to enable him, in person or by counsel, or by agent or messenger, to go to Oklahoma and get these important papers. *Why not,* remains an impenetrable mystery. There is, indeed, no adequate reason or excuse offered for the nonproduction of this evidence, the importance of which was apparent at the outset. It was at all times in the possession or under the control of the defendant. Had it been produced on the trial, and its genuine character proved or admitted, the writer, for one, would not hesitate to say that the conviction ought not to be sustained. There are some things in the State's countershowing on the motion that are not at all satisfactory. The testimony, especially of George Roads, is not well calculated to invite confidence or belief; but, in view of what we have said concerning the appellant's explanation of his failure to produce the alleged new evidence, we think the court could not do otherwise than overrule his application for new trial.

The case was one for the jury; there is sufficient evidence to support the verdict; no reversible error is shown; and the judgment below is—*Affirmed.*

EVANS, C. J., PRESTON and STEVENS, JJ., concur.