ASSOCIATES DISCOUNT CORPORATION, INC., appellant, v. EDWARD
PETER GOETZINGER, appellee.

No. 48386.

(Reported in 62 N.W.2d 191)

January 12, 1954.

White & White, of Harlan, for appellant.

Leonard W. Fromm, of Harlan, for appellee.

OLIVER, J.—George E. Mickel, Jr., was an automobile dealer at Harlan, Iowa, under the trade name of Mickel Motors. Plaintiff, Associates Discount Corporation, had its principal place of business at South Bend, Indiana, and a branch office at Omaha, Nebraska. Harlan was in the territory of this office. Defendant-Goetzinger was a farmer, near Harlan.

October 16, 1948, defendant purchased from Mickel Motors, for $2950, a used 1949 Ford coupé. Defendant was allowed $1350 for his old car. The $1600 balance was represented by his note and contract of conditional sale of the Ford to Mickel Motors. To this $1600 was added $293.40 for finance charge and insurance. Mickel assigned the $1893.40 note and contract to plaintiff, and forwarded them to plaintiff's Omaha office. Plaintiff sent Mickel its check for $1600 and retained the $293.40.

Later the Ford proved defective and about December 27 defendant returned it to Mickel and exchanged it for a Chevrolet, paying Mickel $175 more. Shortly thereafter Mickel became insolvent, and it developed he had not secured title to the Chevrolet. The real owner, Frank Croke, took it from defendant by replevin.

Thereafter plaintiff brought this suit against defendant for judgment on the $1893.40 note and foreclosure of the conditional contract of sale of the Ford. Defendant pleaded Mickel acted as plaintiff's agent in the financing phases of the transactions and had agreed, for plaintiff, to transfer plaintiff's lien from the Ford to the Chevrolet, that thereafter defendant was dispossessed of the Chevrolet, that he received no consideration for the transaction, that any amount owed by him had been paid and satisfied and that plaintiff was estopped to recover on the instruments in suit. The reply denied Mickel was plaintiff's agent in the financing transactions and alleged plaintiff was a holder in due course of the note and contract. The trial court rendered judgment for defendant. Hence this appeal.

Mickel's dealings with plaintiff started in the spring of 1948. He required financing to handle the many automobiles purchased in various states and received in trades. Plaintiff was not much interested in financing this wholesale business. It wanted retail automobile finance paper. In May 1948 plaintiff agreed to finance Mickel on a floor plan and Mickel agreed to solicit retail automobile loans for plaintiff. Plaintiff agreed to pay Mickel for retail loans solicited by him. Mickel's earnings for retail loans secured by him between August 28 and October 18 amounted to $636.50. He refers to these earnings as commissions, as does defendant. In account sheets furnished Mickel, plaintiff listed them under the title, "Dealers participation." Although it makes little difference what name is given Mickel's compensation, the word "commissions" probably best describes these items because they were based upon the amount and type of the retail loans secured for plaintiff by Mickel.

Plaintiff furnished Mickel various forms. For wholesale loans Mickel was furnished forms of sight drafts to be used in buying automobiles, by him and such of his employees as he

designated by filing their signatures in plaintiff's Omaha office. Apparently these sight drafts were regularly honored without question or investigation. When Mickel received the automobiles he would mortgage them to plaintiff on forms furnished by plaintiff. The dealings between plaintiff and Mickel in connection with the wholesale loans to him are indicative of plaintiff's confidence in him and the powers it permitted him to exercise.

The blank notes and contracts of conditional sale for retail loans furnished Mickel contained printed assignments to Associates Discount Corporation, for execution by Mickel, and printed provisions requiring that payments be made at the office of Associates Discount Corporation, Chicago, Illinois. Mickel was authorized to exercise his discretion as to the rate to be charged on retail loans solicited by him. He testified: "We had two charts, different type rates. It depended upon the person buying the automobile. If we had competition with the bank, we pushed one rate; if we knew there was no competition anywhere, we pushed another rate. That was following the discussion I had with these gentlemen of the Associates Discount Corporation."

From August to January, Mickel solicited and handled for plaintiff more than forty retail automobile loans. In the case at bar defendant had told Mickel he proposed to finance the Ford at the local bank. Mickel told defendant of the "good finance plan at Associates" and persuaded defendant to finance it with plaintiff.

Later, when Mickel suggested the exchange of the Chevrolet for the defective Ford, defendant asked him about the financing. At that time a field representative of plaintiff named Malette or Mailette was in Harlan, checking automobiles mortgaged by Mickel to plaintiff, including the Chevrolet. After conferring with Mailette, Mickel told defendant they would transfer the financing from the Ford to the Chevrolet. Defendant then transferred the Ford to Mickel and took the Chevrolet. Shortly thereafter Mickel sold the Ford at an auction in Omaha and the Chevrolet was taken from defendant by replevin.

Plaintiff pleaded Mickel did not act as agent for it in connection with the making of the loan on the Ford and other retail loans. However, the record plainly establishes such agency.

It shows, without dispute, his engagement by plaintiff to procure such loans and the agreement plaintiff would pay him commissions thereon and that both parties proceeded to perform this contract. It is clear he did not represent defendant or others from whom he solicited loans. Nor would it alter his status as agent of the lender that his main business was selling automobiles and he may have been primarily interested in making such sales. An agent does not necessarily engage to devote his full time and efforts, or even a major portion thereof, to such agency. As used in the law of principal and agent, the term agency means the relation resulting where one person authorizes another to act for him in business dealings with others. Burlington Savings Bank v. Prudential Insurance Co., 206 Iowa 475, 477, 218 N.W. 949, and citations; 2 C. J. S. 1023, Agency, section 1.

 Plaintiff contends Mickel's status as its agent in connection with defendant's debt and contract of conditional sale for $1893.40 terminated when these were assigned to plaintiff and plaintiff sent Mickel its check for $1600. With this contention we are unable to agree. The outstanding loans had been made by Mickel to his customers, most of whom, presumably, lived in or adjacent to Harlan. Plaintiff had no office in this territory and Mickel was in a position to co-operate with it in servicing the loans. See Burlington Savings Bank v. Prudential Insurance Co., 206 Iowa 475, 477, 218 N.W. 949, supra. Mickel's commission on loans was not payable until "these contracts were paid out." It is a fair inference one reason for withholding the commission on each loan was to insure Mickel's continued interest and co-operation in connection with such loan.

Mickel continued to act as plaintiff's agent. The procuring of a loan upon the Chevrolet for the purpose of paying the loan on the Ford was within the scope of his agency. This was done by transferring the outstanding loan from the Ford to the Chevrolet. Plaintiff's real complaint is not with what was done but with the procedure adopted.

However, the record shows this procedure was adopted under instructions from one Malette or Mailette, a field representative of plaintiff, from its Omaha office. The typewritten

abstract of the record, filed in district court, uses both the above spellings of this rather unusual name. Mickel testified Mailette called at Mickel's place of business regularly, and checked motor numbers on cars.

Mickel told Mailette of the proposed exchange of automobiles and asked him how it should be handled. Both automobiles were then in Mickel's place. The Chevrolet was covered by a "floor plan" mortgage from Mickel to plaintiff. Mailette told Mickel to let defendant have the Chevrolet and transfer the loan secured by defendant's conditional sales contract from the Ford to it, that the payments would be the same and it would make no difference. Mickel testified: "The finance contract was to be transferred from one [car] to the other. Malette was in the office, took care of the transaction and agreed when the transaction was taking place."

There was testimony for plaintiff that Mailette was merely a collector for it, who occasionally checked Mickel's stock and who repossessed cars for it, but who was not authorized to arrange for the transfer of financing from one car to another without the approval of the manager of the Omaha office. However, the evidence shows he also "finished up on deals" for plaintiff and apparently had been given considerable authority and discretion. In this connection it may be noted the $1600 check sent Mickel from Omaha, October 19, in payment for defendant's contract of conditional sale on the Ford was signed, "Associates Discount Corporation, W. J. Mailette, Branch Manager." This check was honored by the bank upon which it was drawn. Although the record indicates Mailette was not manager of the Omaha branch, his assumption of such title and authority indicates he was permitted to exercise broad powers for plaintiff. In the face of the record, plaintiff may not repudiate the transaction transferring the finance contract from the Ford to the Chevrolet.

Plaintiff complains no instruments were executed to effect the transfer of the lien and that it was not promptly notified of the transaction. It is a sufficient answer that any such failure and delay was attributable not to defendant but to plaintiff's agents.

The trial court held plaintiff had failed to establish it was a holder in due course of defendant's note and contract of sale and that the record showed a failure of consideration thereon. We agree with this conclusion and with the judgment denying recovery against defendant on said instruments.—Affirmed.

All JUSTICES concur.