STATE OF IOWA, appellant, v. EDITH I. NELSON, appellee.

No. 49165.

(Reported in 82 N.W.2d 724)

MAY 7, 1957.

Norman A. Erbe, Attorney General, Freeman H. Forrest, Assistant Attorney General, and William S. Sturges, County Attorney, for appellant.

Franklin E. Gill, of Sioux City, and Morse Hoorneman, of Le Mars, for appellee.

THOMPSON, J.—The appeal is from a judgment upon a peremptory verdict rendered by direction of the trial court at the close of the evidence for the State. The defendant was charged by an indictment in two counts: first with the offense of forging a check, and second with uttering the same instrument. The check was dated December 1, 1955, was payable to the order of Loretta M. Eslava, and was signed by Alberta J. Deegan. The written part of the check was "Sixty six and 80/100 Dollars" and the figures in the usual place in the upper right-hand corner were "$66.80." It is the State's contention that the figures as originally written were "$6.80" and that the check was altered by the defendant by adding another "6" after it was signed by Mrs. Deegan and endorsed by the payee, so that when presented to the bank the figures were "66.80." There is no substantial evidence that the written part of the check was

altered. Two other checks, dated respectively December 8, 1955, and December 16, 1955, were also introduced in evidence. Each of these checks was likewise payable to Loretta M. Eslava and each was signed by Mrs. Deegan. The December 16 check was in writing and figures identical with the check of December 1, except for the date; the December 8 check was the same except that the written amount was "Sixty eight and 90/100 Dollars" and the figures were "68.90." As to each of these latter checks there was the same evidence of the addition of a second figure "6" so that the amounts were changed in the figure part respectively from "$8.90" to "$68.90" in the check of December 8, and from "$6.80" to "$66.80" in the check of December 16. There was no substantial evidence of any change in the written part of either of the latter two checks.

Alberta J. Deegan was an old lady. She is described in the defendant-appellee's brief and argument as a "wheel chair" case. The defendant, Nelson, was employed by her as a nurse, and Loretta M. Eslava as a housekeeper. Both seem to have been with her for some years. She died on December 21, 1955.

There is substantial evidence that the check of December 1, 1955, upon which the two counts of the indictment were based, and the checks of December 8 and 16 as well, were entirely in the handwriting of the defendant, except for the signature of Alberta J. Deegan, and the endorsement of Loretta M. Eslava on the back of each. M. D. Huffman, a handwriting expert in the employ of the Iowa State Bureau of Criminal Investigation, so testified. He also testified that the first "6" in the figures in the upper right-hand corner of each check had been written at a different time than the other figures. He said this appears from a difference in the amount of ink, in the pressure and alignment, and the apparent drawing of the number rather than its execution with a "smooth flowing writing motion." Mr. Huffman has been recognized as an expert on handwriting and as an examiner of questioned documents for many years.

That a change was made in these figures after the checks were signed by Mrs. Deegan and endorsed by the witness also appears from the testimony of Loretta M. Eslava. She said that her wage was $10 per week, with certain deductions. When the

checks were presented to her, the figures written therein were respectively $6.80, $8.90 and $6.80, representing the net amounts due her at the time. She did not look closely at the written amounts in the checks. It was pointed out by Mr. Huffman that it was quite possible to alter the writings also, by leaving sufficient space before the written six, or eight, in each, to write in the word "Sixty" preceding them; but he was unable to say that this had been done.

The plot, as made by the State's evidence, then unfolds with a showing that after the checks were endorsed by Loretta M. Eslava, they were handed to the defendant to procure the cash for her. There is testimony from the bank employees that the defendant did, in turn, present each of the three checks for payment; and that at the time they were presented there they were in the same form as when introduced in evidence. That is to say, the checks of December 1 and 16 were in the sums, both in writing and figures, of $66.80; and the check of December 8 was in the sum of $68.90. These were the amounts paid by the bank to the defendant. Loretta M. Eslava testified that when the defendant returned after cashing the checks she gave to the witness only the respective sums of $6.80, $8.90 and $6.80. The witness did not see her give any money to Mrs. Deegan.

I. The trial court directed a verdict for the defendant upon two major grounds: that there was no showing of any intent to defraud, and that there was no showing that the check upon which the indictment was based was altered in any material respect. We think the court in error upon its first premise. Certainly the State's evidence indicates that at least the figures were altered after the check was signed and endorsed; and since the check was in the possession of the defendant at all times after the endorsement and until it was presented at the bank, an inference that the alteration was done by her arises. Likewise, the additional money was paid to her; Loretta M. Eslava, to whom the check was payable, did not receive it, nor did she see it turned over to Mrs. Deegan. On the face of the case as made by the State, uncontradicted and unexplained, something was seriously wrong. No good reason appears why Mrs. Deegan would have made these checks payable to Loretta M. Eslava each week in sums each sixty dollars larger than were due her.

II. However, we are constrained to agree that there is no evidence the check of December 1 was altered in a material respect. Section 541.17, subsection 1, Code of 1954, a part of the Negotiable Instruments Law, says this: "Where the sum payable is expressed in words and also in figures and there is a discrepancy between the two, the sum denoted by the words is the sum payable; but if the words are ambiguous or uncertain, references may be had to the figures to fix the amount."

The words in the check upon which this action was based were not ambiguous, and the check would have been payable in the amount of sixty-six dollars and eighty cents even if the figures had not been altered; that is, if they had continued to read "$6.80." A change in a written instrument, to constitute the offense of forgery, must not only be wrongfully made, but must change the legal effect of the agreement. State v. Carter, 192 Iowa 196, 198, 183 N.W. 318.

An identical situation was present in People v. Lewinger, 252 Ill. 332, 96 N.E. 837, Ann. Cas. 1912D 239. A check apparently intended to be in the sum of twenty-five dollars by mistake was made out in the written portion as "twenty-five hundred and no/100 dollars." The figures showed $25 originally, but ciphers were added to make "$2500/00." The Illinois Supreme Court, citing that state's Negotiable Instrument Act statute, word for word the same as ours, held the alteration not material, since it did not change the legal effect of the instrument. To the same effect are State v. Lotono, 62 W. Va. 310, 58 S.E. 621; Wilson v. State, 85 Miss. 687, 38 So. 46; and McIntosh v. State, 23 Ga. App. 513, 98 S.E. 555. The same rule is laid down in 23 Am. Jur., Forgery, section 19. The only case holding to the contrary which we have been able to discover is Commonwealth v. Hide, 94 Ky. 517, 23 S.W. 195, 196. This case was cited with approval in Lawless v. State, 114 Wis. 189, 89 N.W. 891. But the facts in the Wisconsin case were not parallel. There the check in question read "$ 9...fifty cents." The alteration consisted in placing a "5" before the "9" so that the instrument read "$59.....fifty cents." There was no written amount in the check except for the "fifty cents." The Hide case is weakened by lack of discussion or reasoning of the point involved.

The rule is somewhat harshly stated as being that the

test is the legal effect of the alteration—whether it makes a different liability for the maker of the instrument—without regard to whether someone may be misled or deceived. The great weight of authority holds to this principle, and in view of the wording of section 541.17, subsection 1, supra, we are compelled to agree that the trial court was correct in holding there was no evidence of a material alteration.

III. There is competent evidence that the checks were written by the defendant; that the figures were altered after the instruments were signed and endorsed and while they were in her possession; and that she received the additional moneys. Alberta Deegan either did or did not intend to make these checks payable to Loretta M. Eslava in sums each sixty dollars larger than was due her. We are not told her mental condition or degree of reliance upon others. If she did not intend to so make them, but was misled into signing them by the figures, or by other means, so that her signature was fraudulently obtained thereby, Code section 713.1 may be applicable. If she did intend to pay Loretta M. Eslava the sums indicated by the checks, the money belonged to Eslava rather than to the defendant and could well have been the subject of embezzlement. But it seems apparent that in charging forgery and uttering a forged instrument the State mistook its remedies.—Affirmed.

BLISS, C. J., and GARFIELD, LARSON, OLIVER, PETERSON, and SMITH, JJ., concur.

HAYS and WENNERSTRUM, JJ., concur in Divisions I and II and the result only.