**HOME FEDERAL SAVINGS & LOAN ASSOCIATION, Algona, Iowa, Plaintiff,**

v.

**PEERLESS INSURANCE COMPANY, Defendant.**

**Civ. No. 836.**

United States District Court
N. D. Iowa,
Central Division.

Sept. 8, 1961.

H. F. Fristedt (of Shumway, Kelly & Fristedt), Algona, Iowa, and Alan Loth, Fort Dodge, Iowa, for plaintiff.

Herschel G. Langdon, of Herrick & Langdon, Des Moines, Iowa, for defendant.

GRAVEN, District Judge.

This is an action to recover from the defendant bonding company under the insuring clauses of a Savings and Loan Blanket Bond (Standard Form No. 22) issued by the defendant to the plaintiff to insure it against certain types of loss. The plaintiff is a Federal Savings and Loan Association organized and existing under the provisions of Section 1464 of Title 12 U.S.C.A. Its principal place of business is in Algona, Kossuth County, Iowa. The defendant is a corporation

organized and existing under the laws of the State of New Hampshire. The amount in controversy greatly exceeds $10,000, exclusive of interest and costs.

The case was tried to the Court. The record consists of the pleadings (as limited by a written stipulation); several depositions; the defendant's answers to plaintiff's requests for admissions under Rule 36, 28 U.S.C.A.; and a detailed stipulation between the parties as to certain facts.

The scope of the present controversy, as outlined by the original pleadings, has been substantially reduced by stipulation. It has been stipulated that the Court may dismiss several of the claims in the original complaint with prejudice. Essentially, the controversy remaining to be determined revolves around five checks issued by the plaintiff totaling approximately $50,000. Four of these checks were drawn on its account at the Humboldt Trust and Savings Bank of Humboldt, Iowa, and the other check was drawn on its account at the Iowa State Bank of Algona, Iowa. The five checks were all drawn by officers and employees of the plaintiff at its Algona office and were issued by those officers and employees for the purpose of making real estate loans to the payees of the checks. Unbeknown to those in the plaintiff's Algona office, however, the named payees of four of these checks were fictitious persons and the payee of the fifth check, although an existing person, had never made application to the plaintiff for a loan and knew nothing about the transaction.

The transactions referred to were the result of a fraudulent scheme perpetrated upon the plaintiff by one Dennis Gahan, who was engaged in the insurance and real estate business in Humboldt. In connection with his real estate business, Gahan engaged in the purchase of vacant lots. He would improve them by the construction of single unit dwellings thereon, and then sell them. Many of those purchasing real estate from Gahan financed their homes through the lending facilities of the plaintiff. Gahan would assist the purchasers in making application for such loans and received a one per cent commission from the plaintiff on all such loans actually completed. In the fraudulent transactions herein involved, Gahan made false applications for loans in the names of purported purchasers of lots owned by him. The lots which were described in the loan applications were unimproved but they were falsely listed on the applications as being improved. Gahan signed the names of these purported purchasers on the loan applications and on the resulting notes and mortgages which were duly acknowledged by himself as notary. When the plaintiff sent a committee of appraisers to inspect the houses and lots described Gahan, on each occasion, showed them a lot several blocks away which did have a house on it. The checks which were issued for the supposed loan transactions were received by Gahan to be delivered to the payees. Gahan endorsed the names of the payees on the checks and then deposited them in his account at the Humboldt Trust and Savings Bank. The circumstances were substantially the same as to each of the five checks involved.

The plaintiff has asserted a claim against the defendant under its blanket bond for the loss which it sustained through Gahan's misappropriations and submitted the appropriate proof of loss required by the contract. The defendant has refused to indemnify the plaintiff and maintains that the coverage of the bond in question does not insure plaintiff against the type of fraudulent transaction which is involved in this case. Thus, the problem before the Court is primarily one of interpretation of an insurance contract. The pertinent coverage provisions of the bond are as follows:

"In consideration of an agreed premium, the Peerless Insurance Company * * * hereby undertakes and agrees to indemnify and hold harmless [the plaintiff] * * * from and against any losses sustained and discovered as hereinafter set forth.

"The Losses Covered By This Bond Are As Follows:

"Fidelity

"1. Any loss through any dishonest, fraudulent or criminal act of any officer or employee of the insured * * *.

"Forgery Or Alteration

"2. Any loss through forgery or alteration of, on, or in any instrument.

\* \* \* \* \* \*

"Fraud

"5. Any loss of property through any other form of fraud or dishonesty by any person or persons, whether Employees or not. * * * "

The insuring clauses of the bond are expressly made subject to certain enumerated conditions and limitations. The only pertinent exclusionary provision of the bond is as follows:

"Section 1. This Bond Does Not Cover:

\* \* \* \* \* \*

"(c) Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or dishonesty, except when covered by Insuring Clause 1 or 2."

It seems clear that the broad "fraud" coverage in paragraph five of the bond is subject to the exclusionary provision 1(c) and does not cover losses sustained as the result of default or nonpayment of any loan made by the plaintiff whether procured by trick, fraud or otherwise. The fidelity clause and the forgery or alteration clause, however, are not subject to the exclusion referred to. Plaintiff originally urged that the "loan" exclusion was not applicable and that, therefore, the loss in question falls within the broad coverage of the fraud clause. By written stipulation of the parties, however, this issue was withdrawn from the Court's consideration and plaintiff places no further reliance on clause five.

Nor does the plaintiff place any reliance on the fidelity clause. The case was submitted to the Court for determination solely on the basis of whether the loss in question was sustained through "forgery" within the meaning of clause two of the bond. The stipulation specifically states that "if the Court shall find and determine, as to any of said [five] checks, that no endorsement thereon was 'forged' [within the meaning of the bond], it shall dismiss plaintiff's claim on such check."

Both parties concede that Iowa law is applicable to the interpretation of the bond which was delivered in Iowa and was to be performed in Iowa. See, e. g., State Bank of Poplar Bluff v. Maryland Casualty Co., 8 Cir., 1961, 289 F.2d 544, 546–547. This concession does not significantly narrow the scope of the Court's search for the controlling principles of law. The written provisions of the bond itself contain no definition of the term "forgery." The Iowa Supreme Court has not been faced with the problem of defining the term "forgery" as used in an insurance contract. That Court has, of course, had to pass occasionally upon just what type of conduct amounts to a "forgery" within the Iowa criminal statute relating to forgery. Forgery was a common law crime. Rockland-Atlas National Bank v. Massachusetts Bonding & Ins. Co., 1959, 338 Mass. 730, 734, 157 N.E.2d 239, 242. It had an established meaning under that law. Bank of Detroit v. Standard Acc. Ins. Co., 1928, 245 Mich. 14, 222 N.W. 134, 137. The term also has a general and popular meaning. Dexter Horton Nat. Bank v. United States Fidelity & Guaranty Co., 1928, 149 Wash. 343, 270 P. 799, 801. The term has a technical meaning under criminal statutes defining it. Pasadena Investment Co. v. Peerless Casualty Co., 132 Cal.App.2d 328, 282 P.2d 124, 52 A.L.R. 2d 203.

In 9 Appleman, Insurance Law and Practice 536–37 (1943), the author states:

"Forgery has been judicially defined as the making or altering, with

intent to defraud, of any writing or printing so as to cause the alteration or execution to purport to be the valid act of a person, which is not. Some courts have held that the criminal statutes are controlling in regard to the definition of the term 'forgery' as used in fidelity policies. But elsewhere it has been stated that the ordinary and generally accepted meaning of such term should be employed rather than the technical legal definition."

In an excellent article by Professor E. Allen Farnsworth, Insurance Against Check Forgery, 60 Columbia Law Review 284, 294–96 (1960), the author points out that forgery is not defined in either the Negotiable Instruments Law or the Uniform Commercial Code, and in regard to the construction of forgery bonds he concludes:

"* * * [C]ourts, in construing forgery bonds, have almost without exception looked not to these statutes [the Negotiable Instruments Law or Uniform Commercial Code] but to the crime of forgery for a definition. This may be a natural choice; forgery bonds are often written in conjunction with policies insuring against such crimes as 'robbery,' 'burglary,' 'embezzlement,' and 'larceny,' for the 'dominant purpose of [such] * * * indemnity bonds is not to protect against loss but to protect against criminal loss.' [Citing Manufacturers & Traders Trust Co. v. Meyer Malt & Grain Corp. (Sup.Ct.1928), 132 Misc. 138, 140, 229 N.Y.Supp. 615, 618.]"

As to what constitutes the crime of forgery as it pertains to forgery bonds, the author states:

"While there is accord on reference to criminal law, there is conflict as to whether it should be to the specific law of the jurisdiction in which the act took place or to some more general definition. There is something to be said for the latter view, since policies are issued at standard premiums on a nationwide basis and uniformity is desirable * * *."

Cases which support the principle of resorting to a general definition of "forgery" rather than to the criminal law of a particular jurisdiction include: Fitzgibbons Boiler Co. v. Employers' Liability Assur. Corp., 2 Cir., 1939, 105 F.2d 893, 895; Rockland-Atlas National Bank v. Massachusetts Bonding & Ins. Co., 1959, 338 Mass. 730, 734, 157 N.E. 2d 239, 242; First National Bank v. Glens Falls Ins. Co., Tex.Civ.App.1959, 329 S.W.2d 115, 116; and Dexter Horton Nat. Bank v. United States Fidelity & Guaranty Co., 1928, 149 Wash. 343, 270 P. 799, 801. However, it appears that in some jurisdictions in order for an act to be deemed a forgery within the coverage of a policy of forgery insurance, it must have been such an act as would constitute an adequate basis for supporting a charge of forgery under the local penal statute denouncing forgeries. Pasadena Investment Co. v. Peerless Casualty Co., 132 Cal.App.2d 328, 282 P.2d 124, 52 A.L.R.2d 203. See also Provident Trust Co. v. National Surety Corp., 3 Cir., 1943, 138 F.2d 252, certiorari denied, 1944, 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080; International Union Bank v. National Surety Co., 1927, 245 N.Y. 368, 157 N.E. 269, 52 A.L.R. 1375; and Manufacturers & Traders Trust Co. v. Meyer Malt & Grain Corp., 1928, 132 Misc. 138, 229 N.Y.S. 615, in which the courts either expressly or impliedly resorted to the criminal law in determining the meaning to be ascribed to the term "forgery" when used in a policy of forgery insurance.

In the present case it is the contention of the defendant that the meaning to be ascribed to the term "forgery" in the bond in question is to be determined by the local criminal law. It is the further contention of the defendant that under that law, as interpreted by the Iowa Supreme Court, the endorsements of the checks in question under the circumstances disclosed by the evidence did not constitute forgeries within the coverage of the bond. In support of its theory

that local criminal statutes are controlling, the defendant relies upon the decision of the Court of Appeals for this circuit in the case of Massachusetts Bonding & Insurance Co. v. Hudspeth, 8 Cir., 1938, 94 F.2d 467, 472. In that case, the Court looked to the Arkansas criminal statutes to determine whether an "embezzlement" had been committed within the meaning of a fidelity bond. It should be noted that more recent pronouncements by that Court have indicated less certainty that local criminal statutes are controlling in determining the meaning of such terms as "false pretenses," "forgery," and "counterfeiting" within the meaning of a fidelity bond.

In the recent case of State Bank of Poplar Bluff v. Maryland Casualty Co., 8 Cir., 1961, 289 F.2d 544, the Court of Appeals was required to determine whether a certain fraudulent transaction involving the execution of chattel mortgages upon automobiles which did not exist amounted to forgery or counterfeiting within the insuring clauses of a bankers blanket bond, similar in some respects to the bond herein involved. In deciding the controversy, the Court of Appeals held that the transaction did not amount to "forgery" or "counterfeiting" either within the generally accepted meaning of the terms or within the meaning of the local statutes creating criminal liability for forgery or counterfeiting. The Court said (289 F.2d page 548): "We do not now decide whether a state statute's definition of a crime such as forgery is to be controlling in the determination of the meaning of the same word in a fidelity bond." See also, Fidelity & Casualty Co. of New York v. Bank of Altenburg, 8 Cir., 1954, 216 F.2d 294, 302, for a similar reservation as to the meaning of "false pretenses" within a fidelity bond. In that case the insurer had contended that the term "false pretenses" used in the policy was to be given the same technical meaning as given to it in the Missouri "false pretense" criminal statute.

It is the contention of the plaintiff that if Gahan's actions constituted forgeries either within the so-called Iowa criminal forgery statute or within the generally accepted meaning of the term, the losses in question are covered by the bond. By way of alternative, the plaintiff contends that even if the term "forgery" is to be given the same technical meaning as is given that term in the so-called Iowa criminal forgery statute, the forgeries in question would nevertheless be within the coverage of the bond.

In the article by Professor Farnsworth, supra, the author concludes (p. 296) that in spite of the statements of certain courts in support of a general definition of forgery, the conflict may be more apparent than real as the results purportedly reached under general definitions usually would have been the same if the local statutes had been applied. This would seem to be the situation in the present case wherein it would not seem to be decisive whether a generally accepted definition or the so-called Iowa criminal forgery statute is determined to be the proper reference. The parties have pointed out no pertinent distinctions. The Iowa forgery statute, Section 718.1, Code of Iowa 1958, I.C.A., provides, in part, as follows:

> "*Forgery.* If any person, with intent to defraud, falsely make, alter, forge, or counterfeit any:
>
> \* \* \* \* \* \*
>
> "8. Indorsement or assignment of any bill of exchange \* \* \*; or
>
> "9. Instrument in writing, being, or purporting to be, the act of another, by which any pecuniary demand or obligation, or any right or interest in or to any property whatever, is or purports to be created, increased, transferred, conveyed, discharged, or diminished—[he shall be imprisoned, etc.]"

Section 718.1 has existed in substantially the same form since the Code of 1851. In its entirety, it is a rather detailed statute. In spite of its detailed provisions, however, the Iowa Supreme Court has expressly stated that the statute does not *define* the offense of "forgery." That this is so is made clear in the decision

of the Court in the case of State v. Johnson, 1869, 26 Iowa 407 at page 413, wherein it is stated:

"It will be seen that this section undertakes to specify the instruments, the false making of which would be forgery, rather than define the offense itself. As to this there is little difficulty; for while different terms may be used, the several writers upon criminal law substantially agree in the definition. Without referring to them, it will be sufficient to state that [definition] adopted at least twice by this court, which is, that *forgery is the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability*." (Emphasis supplied.)

The emphasized portion of the above quotation is the definition of forgery which has been applied by the Iowa Supreme Court in criminal cases wherein "forgery" is alleged. State v. Meeks, 1954, 245 Iowa 1231, 65 N.W.2d 76, 79, certiorari denied 1954, 348 U.S. 902, 75 S.Ct. 225, 99 L.Ed. 708; State v. Sherwood, 1894, 90 Iowa 550, 58 N.W. 911, 912; State v. Thompson, 1865, 19 Iowa 299, 303; State v. Pierce, 1859, 8 Iowa 231, 234. It is also substantially in accord with the definition formulated by those courts, which, in forgery insurance cases, have sought to apply a general definition of forgery. See Security National Bank of Durand v. Fidelity & Casualty Co. of New York, 7 Cir., 1957, 246 F.2d 582, 585–86; Quick Service Box Co. v. St. Paul Mercury Indemnity Co., 7 Cir., 1938, 95 F.2d 15, 16–17; Dexter Horton Nat. Bank v. United States Fidelity & Guaranty Co., 1928, 149 Wash. 343, 270 P. 799. In the latter case the following appears (page 801 of 270 P.):

"The New Standard Dictionary (edition of 1920) contains the following definition of the word 'forgery': 'The act of falsely making or materially altering, with intent to defraud, any writing which, *if genuine*, might be of legal efficacy or the foundation of a legal liability.'"

It is to be noted that the above dictionary definition of forgery is almost identical with the definition of forgery stated by the Iowa Supreme Court in the case of State v. Johnson, supra.

The defendant is not in disagreement with the definition of forgery set forth in the case of State v. Johnson, supra. Under that definition it is a requirement that there must be the false making of a writing which, if genuine, would apparently be of legal efficacy or the foundation of a legal liability. It is the contention of the defendant that in determining the matter of "legal efficacy or the foundation of legal liability" resort must be had to the provisions of the Iowa Negotiable Instruments Law, Chapter 541, Code of Iowa 1958, I.C.A. The defendant contends that a fairly recent amendment of that Chapter relating to fictitious payees made the checks in question bearer paper and that, therefore, the forged endorsements were lacking in "legal efficacy."

Section 541.9, subd. 3, Code of Iowa 1958, I.C.A., which is a part of the Iowa Negotiable Instruments Law, provides, in part, as follows:

"The instrument is payable to bearer:

\* \* \* \* \* \*

"3. When it is payable to the order of a fictitious or nonexisting *or living* person *not intended to have any interest in it*, and such fact was known to the person making it so payable, *or known to his employee or other agent who supplies the name of such payee* \* \* \*."

The italicized words were inserted in the statute by an amendment enacted in 1953 by the 55th General Assembly (Chapter 235). House File 236 included the following statement explaining the purpose of the amendment:

"This amendment enlarges the definition of bearer paper by including those instruments payable to

fictitious persons, where the employee or other agent has knowledge of the check."

It has been said that the amendment, sponsored by the American Bankers Association, was intended to protect banks from losses which they frequently sustained as a result of fraud exercised by an agent of a bank depositor. Home Indemnity Co. v. State Bank, 1943, 233 Iowa 103, 8 N.W.2d 757, was one of many cases holding, before the amendment in question, that a check was not payable to bearer even though made out to a fictitious payee if the *maker* of the check did not have knowledge that the payee was fictitious. Thus, if an agent of the maker of a check, through the preparation of fraudulent documents, obtained a check payable to a fictitious payee and endorsed the check in the name of such payee, a bank paying the check would have paid it on a forged endorsement and would have to reimburse the account of the drawer. The amendment makes such a check a bearer instrument if the fictitious character of the payee is known to the defrauding agent. A bank acquiring bearer paper does not have to worry about the genuineness of the endorsement to justify its title. For a general discussion of this problem, see Note, 2 Drake Law Review 70 (1953).

 The Iowa penal statute relating to forgeries is applicable to forged endorsements on bills of exchange. A check is a bill of exchange. Section 541.-186, Code of Iowa 1958, I.C.A. It should be noted that it is a well settled rule that the crime of forgery may be committed by executing, or procuring to be executed, a written instrument in a fictitious or assumed name with intent to defraud, and this rule applies even if the statute setting forth the crime makes no reference to the use of an assumed name. State v. Meeks, 1954, 245 Iowa 1231, 65 N.W.2d 76, 79, certiorari denied 1954, 348 U.S. 902, 75 S.Ct. 225, 99 L.Ed. 708; Annotation 49 A.L.R.2d 852, and cases therein collected. Thus, in the present case, the fact that the endorsements on four of the five checks were the names of fictitious payees does not in itself make the false making of such endorsements any less a forgery.

It is the contention of the defendant that Gahan was an agent of the plaintiff and, therefore, under the fictitious payee section referred to, the checks when issued were bearer paper; and since they were bearer paper they were negotiable by delivery alone and that the endorsements were surplusage and without legal efficacy and hence did not constitute forgeries under the Iowa law. In this connection the defendant relies strongly upon the case of State v. Nelson, 1957, 248 Iowa 915, 82 N.W.2d 724, 64 A.L.R.2d 1024. In that case, the defendant was charged with forging a check under Section 718.1 of the Code of Iowa, I.C.A. The check in question was drawn and signed by Alberta Deegan, an elderly lady who employed the defendant. The payee of the check was Loretta Eslava, also employed by Alberta Deegan. The payee had endorsed the check and delivered it to the defendant, who attempted to cash the check. At the time the defendant tried to cash it, the amount which was written out on the check was "Sixty-six & 80/100 Dollars," and the figures in the upper right-hand corner were "66.80". The defendant was prosecuted for a material alteration of the check which is a forgery under Section 718.1. There was evidence produced to the effect that the figures on the check had been altered from $6.80 to $66.80. There was, however, no evidence that the written portion of the check had been altered in any way. The Supreme Court held that under the facts of the case there could be no forgery even if there had been an alteration of the figures because, under Section 541.17, subd. 1, Code of Iowa 1958, I.C.A., the written portion was controlling over the figures. The Court stated (page 727 of 82 N.W.2d): " * * * the test is the legal effect of the alteration— whether it makes a different liability for the maker of the instrument * * *."

It is the view of the Court that the Nelson case may be distinguished from the present case. The Nelson case is

primarily concerned with the problem of the alteration of a negotiable instrument and the language of the opinion is not broad enough to apply beyond situations involving alteration. It has been heretofore noted that the definition of the crime of forgery which has been consistently followed by the Iowa Supreme Court is "the false making or *material alteration*, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." [245 Iowa 1231, 65 N.W.2d 79.] (Emphasis supplied.) It is to be noted that an alteration, to be a forgery, must be a "material alteration." The Nelson case only holds that the alteration of a check which does not increase the liability of the maker from that which he incurred by executing the instrument is not a material alteration. As so limited the holding is supported by the weight of authority. See cases collected in Annotation, 64 A.L.R.2d 1029 (1959). It would seem that the holding in the Nelson case is not determinative of the issue as to coverage in the present case.

The Iowa Supreme Court has not passed upon the question of whether a forged endorsement on what is technically bearer paper comes within the scope of the Iowa penal statute relating to forgeries. No case has been cited nor has the Court found one in which such an endorsement has been held not to amount to a forgery under penal statutes relating to forgeries. There are, however, cases holding that such an act is a forgery under penal statutes relating to forgeries. In Milton v. United States, 1940, 71 App. D.C. 394, 110 F.2d 556, the defendant placed a fictitious endorsement on a check which had already been endorsed in blank. In a subsequent criminal prosecution for forgery the defendant urged that a false endorsement made on a check which was already negotiable by mere delivery did not constitute a forgery. The Court held such conduct to amount to a forgery both under the common law definition and under the local statute. Similar results were reached under local criminal stat-

utes in the cases of Green v. State, Fla. 1954, 76 So.2d 645, 647–648, 49 A.L.R. 2d 847, which cited and relied upon the Milton case; and Murry v. State, 1939, 137 Tex.Cr.R. 389, 129 S.W.2d 678, 679–680.

Even more in point is the case of Cutler v. Fidelity & Deposit Co., 1936, 15 Cal.App.2d 759, 60 P.2d 150, which involves a forgery bond. In the Cutler case, an employee of a partnership was authorized to sign checks on behalf of the partnership. He made out seven checks payable to one of the partners, forged the partner's endorsement on the checks, and cashed them. Because the employee was authorized to write checks and because he obviously intended the payee of the check to have no interest therein, the checks were clearly bearer paper under the Negotiable Instruments Law in effect in the jurisdiction. The partnership brought suit on their depositor's forgery bond to recover the loss sustained through their employee's conduct. The Court held that there had been a forgery within the contemplation of the bond, stating (page 151 of 60 P.2d):

"* * * [I]n our opinion the unauthorized act of the employee in signing the name of Earl S. Douglass as an indorser with intent to defraud was sufficient to make that indorsement a 'forged' indorsement within the ordinary and generally accepted meaning of that term. Furthermore, the employee's act in so doing made him guilty of the crime of 'forgery' as defined by [local] statute."

In the Cutler case, as in the present case, the bonding company urged the fictitious payee cases as supporting the proposition that a falsely made endorsement of bearer paper does not constitute a forgery. In referring to those cases, the Court stated (p. 151 of 60 P.2d):

"We find none of these cases in point. Each involved an action by a depositor against a bank, and, under the facts presented, it was held that the depositor rather than the

bank should bear the loss. No question of the rights of a depositor under a policy was involved in any of said cases. * * * In so far as it is indicated in any of said decisions that there was no forgery at all, the language to that effect was unnecessary to the decision."

If it should be that the Iowa Supreme Court would, contrary to the other decided cases, hold that a forged endorsement on what was technically bearer paper did not constitute a forgery under the local penal statute relating to forgeries, there would still be a question as to whether it would hold that in order for an act to be within the coverage of a policy of forgery insurance it is necessary that the act meet all the technical requirements of the criminal charge of forgery. Such a holding would be contrary to the apparent weight of authority.

In the present case it is the contention that an amendment to the Negotiable Instruments Law changed the coverage of the bond involved in the present case in regard to forgeries. It is apparent from the decisions that blanket bonds of the kind here involved are in wide and general use. It would seem that if it were to be held that coverage under such bonds was subject to being changed by amendments to the Negotiable Instruments Law the term "forgery" as used therein would have a somewhat accordion-like character, i. e., the coverage afforded by such bonds would be expanded or contracted depending upon amendments to that Law.

■ The bond in question contains no definition of "forgery." The case of Quick Service Box Co. v. St. Paul Mercury Indemnity Co., 7 Cir., 1938, 95 F.2d 15, involved a claim under a blanket forgery bond. The Court stated (95 F.2d at page 16):

"The bond, having been prepared by the defendant, should be construed in favor of the insured. American Surety Co. v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977. * * *"

It is the well settled Iowa law that doubts in construing insurance policies are to be resolved against the company which used the language in preparing the policy. See cases cited in Nielson v. Travelers Indemnity Co., D.C.N.D.Iowa 1959, 174 F.Supp. 648, 661, affirmed 8 Cir., 1960, 277 F.2d 455.

■ It is the view of the Court that when the Iowa Supreme Court is presented with the question of whether a forged endorsement of what is technically bearer paper is within the coverage of a bond such as the one here involved, it is more probable that it will hold that such an endorsement is within the coverage of the bond than it is to hold to the contrary.

It has been heretofore noted that the contention of the defendant that the forged endorsements were not within the coverage of the bond in question is premised upon the assumption that Gahan was an agent of the plaintiff and that hence the transaction was within the scope of the fictitious payee amendment to the Iowa Negotiable Instruments Law. As heretofore noted, the plaintiff denies the existence of any agency relationship between it and Gahan.

■ It seems clear that Gahan "supplie[d] the name of such payee" within the meaning of Section 541.9, subd. 3. See Citizens Loan & Security Co. v. Trust Co. of Georgia, 1949, 79 Ga.App. 184, 53 S.E.2d 179, 181; Hillman v. Kropp Forge Co., 1950, 340 Ill.App. 606, 92 N.E.2d 537, 540. One of the checks involved was made out to an existing person. It seems well settled that an existing person may be a fictitious payee within the statute if there is no intention by the agent supplying the name that such person have any interest in the check. Hillman v. Kropp Forge Co., supra, 92 N.E.2d at page 540; Airco Supply Co. v. Albuquerque National Bank, 1961, 68 N.M. 195, 360 P.2d 386, 389. In order for the checks in question to be bearer paper so as to supply the first premise of the defendant's theory, Gahan's agency must be established. It is undisputed in the rec-

ord that the officers of the plaintiff who issued the checks did not know that they were payable to fictitious payees.

It is not claimed that Gahan was an employee of the plaintiff. If he were, of course, the loss he caused it would be covered under the fidelity clause of the bond. It is the defendant's contention that even though he was not an employee he was nonetheless an agent within the meaning of the above statute. As a source of information for determining the precise nature of the business relationship between Gahan and the plaintiff, the Court must rely upon the depositions of Gahan, the officers of the plaintiff, and certain other persons possessing some knowledge of the relationship. The Iowa Supreme Court has said that "agency is a condition of which anyone having knowledge of it may testify, subject however to the test of cross-examination." Fritz v. Chicago Grain & Elevator Co., 1907, 136 Iowa 699, 114 N.W. 193, 195. In making its determination as to the existence or absence of an agency relationship, the Court must base its decision on the facts testified to and not upon the mere conclusions of the witnesses unsupported by facts. The facts as they appear include the following: Gahan was not an officer, director or shareholder of the plaintiff; he was not on its payroll and it paid no social security or withholding tax on his account; he did not work in or about the plaintiff's Algona office; he operated his own insurance and real estate business in Humboldt and the plaintiff contributed nothing to that business; making loans was only incidental to Gahan's insurance and real estate business; he was free to and often did make loan applications for his customers to lending institutions other than the plaintiff; he did not make out the loan papers (notes and mortgages) but received them already prepared and ready for signing; he had no authority to bind the plaintiff to any particular loan arrangement; he did not advertise himself as an agent or representative of the plaintiff. Most of the foregoing would tend to negative an agency relationship. On the other hand, Gahan was paid a commission of one per cent by the plaintiff on all loans which were completed on applications made by him on behalf of the borrowers; it is admitted that if someone from Humboldt went to the plaintiff's office in Algona to secure a loan he would be referred back to Gahan and told to have him make the application for him; and it is apparent that in the process of negotiating such loans Gahan did nearly everything on the Humboldt end but examine the title and appraise the property. On each transaction Gahan would send the plaintiff an application on behalf of a prospective borrower (usually someone purchasing real estate from him), the plaintiff would send back the notes and mortgages to Gahan in order that he could have the borrowers sign them, and after everything was completed the check for the amount of the loan would be sent to Gahan for delivery to the borrower. On a few isolated occasions, but not ordinarily, Gahan would collect a loan payment for plaintiff and on each occasion would remit it directly to plaintiff's Algona office. Gahan testified in his deposition that on one occasion he paid an attorney's fee for plaintiff.

The plaintiff urges that Gahan was obviously an independent contractor. This does not mean that he cannot also be an agent, however. In Restatement (Second), Agency Sec. 14N, it is stated:

"* * * '[I]ndependent contractor' is a term which is antithetical to the word 'servant', although not to the word 'agent'. In fact, most of the persons known as agents, that is, brokers, factors, attorneys, collection agencies, and selling agencies are independent contractors * * * since they are contractors but, although employed to perform services, are not subject to control or right of control of the principal with respect to their physical conduct in the performance of the services. However, they fall within the category of agents. They are fiduci-

aries; they owe to the principal the basic obligations of agency: loyalty and obedience."

The Iowa Supreme Court has said that · an agency results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent of the other to so act. Brown v. Schmitz, 1946, 237 Iowa 418, 22 N.W. 2d 340, 343. This need not be proven by direct evidence of an agreement between the parties but may be established from their words and conduct. Andrew v. Kolsrud, 1934, 218 Iowa 15, 253 N.W. 913, 914; Greenlease-Lied Motors v. Sadler, 1933, 216 Iowa 302, 249 N.W. 383, 386. The fact that both principal and agent categorically deny the existence of the relationship is not controlling and the trier of the facts has a right to disregard the "yes" or "no" answers if the inferences to be drawn from the evidence as a whole establish the existence of the relationship. Andrew v. Kolsrud, supra, at page 914 of 253 N.W.

There are two Iowa cases involving an alleged "agency" status of individuals who arranged loans between lenders and borrowers. In each case the Court held such individual to be the agent of the lender rather than the agent of the borrower. These are the cases of Associates Discount Corp. v. Goetzinger, 1954, 245 Iowa 326, 62 N.W.2d 191, 193; and Burlington Sav. Bank v. Prudential Ins. Co., 1928, 206 Iowa 475, 218 N.W. 949. Each case presents a somewhat stronger set of facts supporting the alleged agency than the present case, however. In each of those cases, the Court found direct evidence of an agency contract, while in the present case there is only circumstantial evidence.

It is perhaps important that the question to be determined is whether Gahan was an agent within the meaning of the particular statute involved. In Restatement (Second), Agency Sec. 2, comment e, it is pointed out that "[w]hether the word 'agent' as used in a statute corresponds to the [generally accepted] mean-

ing here given depends, with other factors, upon the purpose of the statute." It is pointed out that in the statutes which provide for the service of process upon the agent of a corporation, the term "agent" has been interpreted consistently with the due process clause of the constitution and not limited to its common law meaning.

Search has revealed only one reported case in which the question of the required agency relationship under the statute involved in the present case was specifically litigated. That is the case of Southall v. Columbia National Bank, Mo. App., 244 S.W.2d 577. The controversy grew out of a tripartite agreement between a building contractor, a lender, and an individual employed for a consideration to supervise the making of payroll and material payments under the terms of the contract. The lender advanced money to the supervisor which the latter deposited in a special bank account to disburse as required. The contractor would bring invoices and bills to the supervisor and the latter would make out a check payable to the company listed on the invoice for the amount of the invoice. The contractor also presented the supervisor with a weekly payroll sheet and the latter would make out the payroll checks that were called for on the sheet. Eventually the contractor began to supply the supervisor with fictitious invoices and to insert fictitious names on the payroll sheet. The contractor endorsed the checks so obtained in the names of the fictitious payees and cashed them. The supervisor later sought to have the bank which paid those checks reimburse his account on the theory that the checks had been paid on a forged endorsement. The Missouri Negotiable Instruments Law had been amended a few years before so that the fictitious payee section of the Law was in substance the same as that now contained in Section 541.9, subd. 3 of the Iowa Law as amended. The Court, in discussing the matter of checks payable to a fictitious payee, stated (244 S.W.2d at pages 580–81):

" \* \* \* Prior to the amendment of the statute such a check was not payable to bearer unless the fact that the payee was fictitious ' "was known to the person making it so payable" '. \* \* \* However, all of the transactions here involved occurred after the statute was amended in 1945. Under the amended statute a check made payable to the order of a fictitious or nonexisting payee is a bearer instrument if the fictitious character of the payee is known to the maker's 'employee or other agent who supplies or causes to be inserted the name of such payee.' In such case the maker is bound by the guilty knowledge of his agent even though the latter had no authority to prepare or execute the check in question. \* \* \* "

At the trial, the supervisor denied that the contractor was his agent. The trial court submitted to the jury the issue of whether the contractor was acting as the supervisor's agent in supplying the names of the payees. The jury found that he was so acting and returned a verdict for the drawee bank. On appeal the supervisor tried to raise the question of the sufficiency of the evidence as to the alleged agency but the Court held that since he had not moved for a directed verdict in the trial court he had waived any objection to the submission of the issue to a jury. Because of that feature, the decision is not particularly helpful on the question as to whether under the circumstances in this case Gahan was an agent of the plaintiff.

The question of the alleged agency relationship is a very close and troublesome one. The Iowa Supreme Court has stated the test of agency in the case of Brown v. Schmitz, 1946, 237 Iowa 418, 22 N.W. 2d 340, in which it was claimed that one Mead was the agent of the defendants. In affirming a directed verdict in favor of the defendant, the Court stated (page 345 of 22 N.W.2d):

"The evidence shows no manifestation of consent by defendants that Mead should act on their behalf and subject to their control, nor consent by Mead so to act. This is the test of agency. \* \* \* "

In the present case there was no express manifestation of consent by the plaintiff that Gahan was to act as its agent and there was no express manifestation by Gahan that he would act as its agent and subject to its control. The circumstances shown by the evidence are not such as to support a finding that the claimed agency relationship existed between the plaintiff and Gahan. In the absence of the establishment of the affirmative by the preponderance of the evidence, the negative prevails. Therefore, under the record in this case it is the determination of the Court that Gahan was not either an "employee or other agent" of the plaintiff.

It is the holding of the Court that the defendant is liable to the plaintiff for the losses sustained by it on the checks in controversy in the amounts set out in the stipulation between the parties.

It Is Ordered that judgment shall be entered in favor of the plaintiff and against the defendants for said amounts.

It Is Further Ordered that the other claims asserted by the plaintiff against the defendant in its complaint be dismissed with prejudice in accord with the stipulation of the parties.

It Is Further Ordered that the foregoing opinion shall constitute the findings of fact, conclusions of law, and order for judgment pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.